ORLA ROBERTS v. S. B. ROBERTS.

(Filed 8 June, 1923.)

**1. Husband and Wife—Actions—Common Law—Statutes.**

The common-law fiction that the entity of the wife merged by marriage in that of her husband, and that neither may sue the other, is a matter of public policy that it is the province of the Legislature to change by statute, for it may declare what acts shall be contrary to or in keeping with the public policy of the State.

**2. Same—Torts—Constitutional Law.**

Under the provisions of C. S., 408, 454, 2606 *et seq.,* passed in pursuance of Article X, section 6, of our State Constitution, husband and wife are

authorized to contract and deal with their separate property, subject to specific exceptions as if they were unmarried; and by suing alone the wife may recover not only her earnings for personal service, but damages sustained by her in consequence of personal injury or other tort.

**3. Same—Willful Torts.**

In order for the wife to recover damages for a tort committed by her husband causing her a personal injury, the test of his liability is whether he has committed the breach of a legal duty he owed to her without distinction as to whether the breach was a willful or negligent act.

**4. Same—Negligence—Automobiles.**

The defendant driving an automobile with his wife and children is liable in tort for his negligent act which causes his wife a personal injury in the wife's action against him, the common-law fiction of a merger of the identity of the wife with that of her husband, and that a recovery may not be had by her in view of their relationship, having been changed by our statutes. C. S., 408, 454, 2606 et seq.

APPEAL by defendant from *Bryson, J.,* at March Term, 1923, of MADISON.

The parties are husband and wife. The defendant, in company with his wife (the plaintiff), their children, and others, was driving his car on the road between Marshall and Mars Hill, and while turning a sharp curve caused his car to collide with one driven by Raburn Hensley. The plaintiff was injured by the collision and thereafter brought suit against the defendant to recover damages for the injuries which she sustained. She alleged various acts of negligence on the part of the defendant causing injury to her hand, blood poisoning, the amputation of a finger, and other personal injuries.

The defendant denied the alleged acts of negligence, pleaded the marriage relation in bar of the plaintiff's recovery, and insisted that it is contrary to the laws of this State and against public policy for the plaintiff to sue the defendant while they are living together as husband and wife.

The issues were answered in favor of the plaintiff, and from the judgment rendered the defendant appealed.

*Guy V. Roberts and Thomas S. Rollins for plaintiff.*
*J. Coleman Ramsey and Harkins & Van Winkle for defendant.*

ADAMS, J.   The appeal presents the sole question whether a wife can maintain an action against her husband to recover damages for personal injury caused by his negligence, that is, by a tort which does not involve an assault or any other kind of willful or intentional wrong. The husband's liability for an assault or other unwarranted and reckless trespass upon the person of his wife has been considered and determined. *Crowell v. Crowell,* 180 N. C., 516.

ROBERTS *v.* ROBERTS.

By the theory of the common law, the legal existence (the individuality) of the wife was suspended during coverture or incorporated into that of the husband—*vir et uxor sunt quasi unita persona, quia caro una et sanguis unus*—and upon this fiction depended most of the rights, duties and liabilities growing out of the marriage relation. Schouler's Dom. Rel., 59. This feigned unity of the persons operated to prevent either spouse from contracting with the other. Upon their marriage the husband acquired the wife's personal property, *jure mariti,* and consequently she could neither give nor contract to give him what he already owned, and he could neither grant anything to her nor enter into a covenant with her, because he could not contract with or execute a grant to himself. Likewise, says Eversley, "Neither husband nor wife could sue each other for personal torts committed by one against the other—such as libel, slander, assault and battery, or injury arising out of negligence; and this was so not only on the ground of the merged existence of the wife and their incapacity to acquire civil rights against each other, but also on account of the unseemly spectacle presented by husband and wife seeking pecuniary compensation from each other for personal wrongs." Dom. Rel., 248. This principle, it may be deduced, has its foundation in regard for the public welfare as well as in the legal fiction of the wife's merged existence. True, in Studies in History and Jurisprudence, 819, Bryce maintained that the wife's position at common law should be regarded as a compromise between the three notions of absorption, of a sort of guardianship, and of a kind of partnership of property, in which the husband's voice nominally prevailed; but this conclusion, if accepted, is not destructive of the common-law doctrine that the nonliability of husband and wife *inter se* in contract and in tort was based not only upon a concept of the unity of the persons, but upon a sound policy which discouraged the transmutation into a cause of action of trivial or unfortunate matrimonial bickering. Reeve's Dom. Rel., 129; 2 Bl. Com., 442; Eversley's Dom. Rel., 167, 291; Schouler's Dom. Rel., 77. And in the absence of a constitutional or statutory provision permitting a husband and his wife to retain their separate legal identity after marriage, the rule still prevails that husband and wife are a legal unity, and therefore incapable of suing each other at law. See citation of authorities in note to *Brown v. Brown;* Ann. Cas., 1915 D, 73; in note to *Thompson v. Thompson,* 14 Ann. Cas., 881, and in *Crowell v. Crowell, supra,* concurring opinion.

It is equally true, however, that the tendency of modern legal thought has been not entirely to displace the common law, but to enlarge the rights of married women even to the extent in some instances of abolishing the common-law fiction. Accordingly, the Legislatures of several states have enacted laws purporting to emancipate married women, the

legal interpretation of each law depending upon its phraseology or particular provisions. These various statutes may be divided into two general classes: those which change and those which do not change the foundation of the marriage status. Under the first, either spouse, in the absence of a restrictive provision, may sue the other in contract or in tort; but under the second it is generally held that such right of action is not conferred. Naturally, there is diversity of opinion as to whether a particular statute supports the one theory or the other, but the reasoning upon which the various decisions *pro* and *con* are based, aptly illustrated by the following authorities, need not further be pursued. *Fiedeer v. Fiedeer,* 140 Pac. (Okla.), 1023; *Brown v. Brown,* 89 At. (Conn.), 889; *Fitzpatrick v. Owens,* Ann. Cas., 1918 C (Ark.), 773; *Prosser v. Prosser,* 102 S. E. (S. C.), 787; *Thompson v. Thompson,* 218 U. S., 611; *Woltman v. Woltman,* 189 N. W. (Minn.), 1022; *Heyman v. Heyman,* 92 S. E. (Ga.), 25; *Dishon v. Dishon,* 219 S. W., 794; *Ex parte Badger,* 226 S. W. (Mo.), 936; *Newton v. Weber,* 196 N. Y. Sup., 113; *Strom v. Strom,* 6 L. R. A., N. S. (Minn.), 191; *Peters v. Peters,* 23 L. R. A., N. S. (Cal.), 699.

We have said that certain rights, duties, and disabilities of husband and wife were produced by the joint operation of public policy and a common-law fiction; and as it is the prerogative of the Legislature to change or modify the common law, and to declare what acts shall be contrary to or in keeping with public policy, it is necessary to determine in what way, if any, and to what extent the relation of husband and wife has been modified in this jurisdiction by legislative enactment.

Pursuant to Article X, section 6, of the Constitution, the Legislature has passed several statutes (to some of which special reference need not be made) defining or prescribing the rights and liabilities of married women. Particularly, it has authorized and empowered them to contract and deal with respect to their real and personal property, subject to specific exceptions, as if they were unmarried, and by suing alone to recover as their sole and separate property not only their earnings for personal service, but damages sustained by them in consequence of personal injury or other tort. C. S., 408, 454, 2506 *et seq.*

By this legislation the relation which married women sustain to their husbands as well as to third parties has been materially affected. The unity of person in the strict common-law sense no longer exists in this jurisdiction, because many of the common-law disabilities have been removed. This change relates to remedies as well as to rights. Following the adoption of the Constitution, the Legislature enacted a statute authorizing a married woman to sue alone when the action is between herself and her husband; and this statute has been construed to confer upon the wife the right to maintain an action against her husband.

Battle's Rev., 154; C. S., 454; *Shuler v. Millsaps,* 71 N. C., 297; *McCormac v. Wiggins,* 84 N. C., 279; *Manning v. Manning,* 79 N. C., 293; *Robinson v. Robinson,* 123 N. C., 137; *Perkins v. Brinkley,* 133 N. C., 158; *Graves v. Howard,* 159 N. C., 594.

While this construction of the statute has frequently been applied to enforce contracts and to determine proprietary rights between husband and wife (the conspicuous exception being *Dorsett v. Dorsett,* 183 N. C., 354), the question of its application to actions *ex delicto* was finally determined in *Crowell v. Crowell, supra.* There it was held by a divided Court, it is true, that the act of 1913 (C. S., 2513), conferred upon the wife a cause of action against her husband for the secret communication of a disease which impaired her health. Although it is said in the concurring opinion that the wife should not be denied an action against her husband for a willful or wanton injury, the opinion of the Court purports to be founded upon basic principles in the law of torts, the application of which to the marriage relation—not nice or refined distinctions between a willful and a negligent tort—produced a marked divergence in the expression of individual opinions. The truth is, that upon the question of the defendant's liability the Court properly made no apparent effort to distinguish a willful from a negligent injury to the person, for with certain cases specifically excepted, the rule is that liability in tort is not dependent on the element of wantonness or malice. An act may be involuntary, intentional, or negligent. Indeed, it may be said that neither the theory of culpability nor that of absolute responsibility is exclusively true, and that the ultimate test of liability is the breach of a legal duty which the defendant owes to the plaintiff. Hale on Torts, secs. 13-24; 1 Jaggerd on Torts, 48 *et seq.;* 7 Harv. Law Rev., 455; *Robinson v. Threadgill,* 35 N. C., 40; *Bond v. Hilton,* 44 N. C., 308; *Solomon v. Bates,* 118 N. C., 311; *Fisher v. Greensboro,* 128 N. C., 375.

We conclude, therefore, that the plaintiff may maintain her action without regard to the question whether her injuries were the result of the defendant's negligent or willful wrong, that his Honor properly declined to give the defendant's requested instructions, and that there is no reversible error in the record.

No error.