WAIT, Plaintiff, vs. PIERCE and another, Appellants, and WAIT, imp., Respondent.

*April 5—November 9, 1926.*

*Husband and wife: Action for negligence maintainable by wife against husband: Statutes: Construction: Questions of public policy: Married Women's Acts: Contribution: As between joint tortfeasors: Pleading: Bringing in parties against whom contribution may be sought: Res adjudicata: As to common liability: Discretion of court.*

1. Statutes conferring upon married women rights possessed before marriage do not create a power never possessed by the wife, but restore a power enjoyed while a *feme sole* but which she lost upon marriage. p. 207.
2. Sec. 6.015, Stats., broadening the rights and privileges of women, was intended to place them on a basis of equality with men before the law, not only in the particulars mentioned but in all other respects. p. 210.
3. Questions of public policy are primarily for the legislature; but when the legislative purpose is declared in plain and unmistakable language, it is not within the province of the court to interpose contrary views of what the public need demands. pp. 210, 212.

4. It is only when the court is convinced that the legislature did not intend a particular result that it may properly supply limitations not found in the language of the statute. p. 212.

5. Statutes relating to the rights and privileges of married women will be liberally construed, and sec. 6.015 is *held* not against sound public policy; a wife, therefore, may maintain an action against her husband for injuries to her person proximately caused by his negligence. pp. 212, 217.

*On rehearing:*

6. The right of contribution is founded upon principles of equity and natural justice and does not spring from contract; whether the common obligation rest in contract or in tort, the right of contribution is based on the fact that one of the common obligors has discharged more than his fair share of the obligation. p. 225.

7. The right to bring in parties where contribution is claimed is in its nature the same whether the action is on contract or in tort. p. 226.

8. Sec. 260.19, Stats., relating to the interpleading of additional parties, and sec. 263.15, relating to proceedings between defendants, give courts plenary powers to call in new parties, to mold the pleadings, and to dispose of all issues germane to the main controversy arising between the plaintiff and the defendant, between defendants, or between a defendant and others, in one action. p. 227.

9. Whether a third person should be made a party defendant under sec. 260.19, Stats., rests in the sound discretion of the court. p. 228.

10. The liability of one joint tortfeasor to another joint tortfeasor who discharges more than his equitable share of a liability resting on both by a single judgment is *res adjudicata* as to the establishment of the common obligation. [*Bakula v. Schwab,* 167 Wis. 546, modified.] pp. 228–230.

11. Where defendants are sued as joint tortfeasors, those having a single liability may have determined the right of contribution against another defendant under sec. 260.19, Stats., though satisfaction of more than their equitable share of the common liability is necessary to complete the cause of action. p. 232.

ESCHWEILER, J., VINJE, C. J., and DOERFLER, J., dissent.

APPEAL from an order of the circuit court for Winnebago county: FRED BEGLINGER, Circuit Judge. *Reversed.*

The plaintiff, Mathilda J. Wait, is the wife of *George E. Wait,* hereinafter referred to as the husband. The defend-

ants *Pierce* and *Borenz* are copartners, engaged in operating a garage business, and will hereinafter be referred to as the partners. The plaintiff in her complaint charged the partners with liability for certain injuries sustained by her by reason of the negligent operation of an automobile by an employee of the partners. The partners, upon an allegation that the husband was jointly liable with them, moved that the husband be made a party defendant. The motion was granted. The partners thereupon filed a cross-complaint, and prayed that if it be found that the partners and husband were jointly liable the partners have judgment against the husband for one half of the amount awarded to the plaintiff and paid by the partners. To the cross-complaint of the partners the husband demurred on the ground that the cross-complaint does not state facts sufficient to constitute a cause of action.

The court held that the wife could not maintain an action against the husband for injuries to her sustained by reason of his negligence; that the partners, therefore, would not be entitled to contribution; and sustained the demurrer. From the order sustaining the demurrer the partners appeal to this court.

For the appellants there was a brief by *Bouck, Hilton, Kluwin & Dempsey* of Oshkosh, counsel, and *Fawsett, Smart & Shea* of Milwaukee, of counsel, and oral argument by *Edmund B. Shea* and *John F. Kluwin.*

For the impleaded defendant and respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe* and *L. J. Burlingame,* of counsel, all of Milwaukee, and oral argument by *Mr. Doe.*

The following opinion was filed May 11, 1926:

ROSENBERRY, J. Two questions are presented upon this appeal. First, under the law of this state, may a wife maintain an action against her husband for injuries to her person, proximately caused by the negligence of the hus-

band? Second, may a third party maintain an action for contribution for injuries caused by the joint negligent act of the third party and husband, even though the wife cannot maintain an action directly against the husband on account of the injuries sustained by her?

The first and primary question in this case has never been answered by this court. Its answer involves not only a consideration of the law, but questions of public policy which are vigorously urged upon our attention. We fully recognize the importance of a decision in this case and the fundamental character of the questions involved. We have been greatly aided in our consideration of this question by the able and exhaustive briefs which have been filed upon both sides.

We may begin our consideration by a reference to the constitution of the state of Wisconsin, sec. 13, art. XIV, which provides:

"Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature."

It is fully and freely conceded that at the common law neither the husband nor the wife could maintain an action against the other for damages by reason of any wrong done by the one to the other. The constitution was adopted in 1848. The Statutes of 1849 contain no provision modifying the common-law disabilities of married women. "An act to provide for the protection of married women in the enjoyment of their own property" (ch. 44, Laws of 1850) was adopted at the second session of the legislature. This enactment was carried forward and became secs. 1, 2, and 3 of ch. 95 of the Revised Statutes of 1858, became secs. 2340, 2341, and 2342 of the Revised Statutes of 1878, and the sections were continued in the Statutes of 1898, and are now secs. 246.01, 246.02, and 246.03 of the Statutes of 1925. These sections conferred upon the wife the right

to hold real estate and personal property free from control by the husband, and as amended permitted the husband and wife to contract with reference to the property held by her with the same legal effect as if the transaction were between other persons.

By sec. 3 of ch. 155 of the Laws of 1872 a married woman was given the right to sue in her own name and have all the remedies of a single woman with respect to her earnings, and she was made liable to be sued as if single for the recovery of her ante-nuptial debts, and execution might be levied on any judgment against her as against other judgment debtors except that an execution against her person could not issue.

Sec. 3 of ch. 155 of the Laws of 1872 was carried into the Revised Statutes of 1878 as sec. 2345 and is the basis of the present statute (sec. 246.07). It was amended by ch. 99 of the Laws of 1881 by adding thereto the following:

"And any married woman may bring and maintain an action in her own name for any injury to her person or character the same as if she were sole, and any judgment recorded in such action shall be the separate property and estate of such married woman, provided that nothing herein contained shall affect the right of the husband to maintain a separate action for any such injuries as now provided by law."

Determination of the principal question presented by the record in this case depends upon the interpretation given to the amendment of 1881.

It has been held over and over again that the intent of the legislature when discovered must control in the interpretation of statutes. Did the legislature intend by the enactment of ch. 99 of the Laws of 1881 to confer upon a married woman the right to bring an action against her husband for any injury to her person or character the same

as if she were sole? The intent of the legislature is to be determined first by the language which the legislature used in conferring the right. It is conceded that this language is broad enough, if the language be given its natural and ordinary meaning, to confer such a right. If she were sole, she could maintain an action "for any injury to her person or character" against any person whose wrongful act caused the injury. Under the amendment, can a married woman do so if the wrongdoer happens to be her husband? It is quite apparent she can unless something in the nature of an exception be interpolated into the statute. It must be interpolated because the statute itself contains no exception. It is argued very forcibly that the legislature could not have had in mind in the enactment of the statute the possibility that under its terms a wife might bring an action against her husband for tort, first, because no such right existed at common law and that the statute is by its terms in derogation of the common law and therefore to be strictly construed; second, that the right of a wife to sue her husband for tort or the right of the husband to sue the wife for tort is so contrary to the fundamental principles of the common law that had that situation been present in the minds of the legislators it is not to be supposed that the legislature would have enacted the statute; third, that the conferring of such a right upon the wife tends to promote family discord and so strikes a blow at the family relation which is the foundation of our social order, and for that reason it should be held that the right is not conferred by the general language of the act.

From an early day this court has held that conferring upon married women by statute the rights which they possessed before their marriage was not so much the creation of a power which a married woman never possessed as a restoration of power which she had as a *feme sole* and which

she lost by her marriage. *Krouskop v. Shontz* (1881), 51 Wis. 204, 217, 8 N. W. 241; *Carney v. Gleissner* (1885), 62 Wis. 493, 22 N. W. 735. Such statutes are to be liberally construed. *Krouskop v. Shontz, supra; Houghton v. Milburn* (1882), 54 Wis. 554, 11 N. W. 517, 12 N. W. 23; *Shanahan v. Madison* (1883), 57 Wis. 276, 15 N. W. 154.

Under the statute conferring upon a married woman the right to hold real and personal property and to sue and to be sued in relation thereto, it was held that a husband could maintain an action of replevin against the wife. The court said:

"The language of our statute is plain. The wife may 'be sued in respect to her separate property or business,' and in respect thereto has 'all the remedies of an unmarried woman.' The husband is nowhere excepted from the operation of the statute, and we have no right to except him." *Carney v. Gleissner,* 62 Wis. 493, 498, 22 N. W. 735.

*Second.* Courts cannot be charged with any lack of respect for the common law. No doubt the departure from some of its fundamental principles has been accompanied by loss rather than gain. On the other hand, its greatest admirer cannot claim perfection for it. At common law the personality of the wife was merged in that of the husband and there existed a legal unity. That conception grew out of conditions which no longer exist, and rested, in the final analysis, upon a conception which made the wife little more than a chattel of the husband. The rigor of the common law in this respect has been greatly relaxed, and both by decision and statute married women have gradually attained in law a place of equality with the husband in the marital status. This gradual change in the status of the wife has been viewed with alarm by many common-law lawyers.

In *Duffies v. Duffies* (1890), 76 Wis. 374, 45 N. W. 522, it was held under the amendment of 1881 that a wife could not maintain an action against a third person for

the alienation of her husband's affections and the loss of his society. It is quite clear that the court reached its conclusion in part at least for the reasons that are urged upon us here,—particularly that it was not in accord with sound public policy. The court said:

"Such a right of action does not exist by law, nor can it be inferred from the ameliorated and changed conditions of the wife, and her equality with her husband, produced by modern legislation in her behalf. Whatever equality of rights with her husband she may have, it is not proper to say that 'her right to the society of her husband is the same in kind, degree, and value as his right to her society.' There are natural and unchangeable conditions of husband and wife that make that right radically unequal and different.

"This right of action in the wife would be the most fruitful source of litigation of any that can be thought of. . . . There would seem to be very good reason why this right of action should be denied,"—

and the court denied it.

By ch. 17 of the Laws of 1905 there was conferred upon the wife in express terms the right which was denied her in *Duffies v. Duffies, supra*. The prophecy of the court made in 1890 in respect to numberless actions which would be brought by wives on account of the loss of affection and society of husbands has not come true. Such actions are in this jurisdiction comparatively rare.

The "natural and unchangeable conditions" spoken of by the court in 1890 have since that time undergone great change, and by ch. 529 of the Laws of 1921 (sec. 6.015, Stats.) it was declared:

"Women shall have the same rights and privileges under the law as men in the exercise of suffrage, freedom of contract, choice of residence for voting purposes, jury service, holding office, holding and conveying property, care and custody of children, and in all other respects. The various courts, executive and administrative officers shall construe the statutes where the masculine gender is used to include the feminine gender unless such construction will

deny to females the special protection and privileges which they now enjoy for the general welfare. The courts, executive and administrative officers shall make all necessary rules and provisions to carry out the intent and purposes of this statute."

We had occasion to consider this statute in *First Wis. Nat. Bank v. Jahn* (1922), 179 Wis. 117, 190 N. W. 822, and we need not repeat here what was said there. It is urged, however, that this amendment was intended to carry into effect the suffrage amendment and to place men and women on an equality before the law; that it was not aimed at and did not affect, either expressly or impliedly, marriage or marriage relationship; that it applies generally to all women whether married or single, and that numerous incidents derived from the common-law marriage still exist. It was not necessary to refer to freedom of contract, holding and conveying property, care and custody of children in order to carry the suffrage amendment into effect. This language related only to married women. The *feme sole* has always had freedom of contract, right to hold and convey property, and she certainly was not concerned with the care and custody of children. It seems too clear for argument that sec. 6.015 further modified the rights of husband and wife as they existed at common law and that it was designed to place them on a basis of equality before the law not only in the particulars mentioned but "in all other respects."

Questions of public policy are primarily for the legislature. In the face of legislative history relating to property rights and status of married women we find no ground for saying that although the act of 1881 conferred upon married women rights which they did not enjoy at common law, the conferring of the right claimed in this case, that is, the right of a married woman to maintain an action for an injury to her person against her husband, was not

in the mind of the legislature.  As was said by this court in *Carney v. Gleissner,* 62 Wis. 493, 22 N. W. 735, speaking of the power conferred by the statute authorizing her to sue and be sued and holding that a husband might maintain an action of replevin against the wife, "The husband is nowhere excepted from the operation of the statute, and we have no right to except him."  When this court declared in *Duffies v. Duffies,* 76 Wis. 374, 45 N. W. 522, that conferring upon the wife the right to maintain an action for alienation of her husband's affections would contravene sound public policy, the legislature answered by conferring upon the wife that right in express terms.  We all have more or less conscious ideals and cherished concepts relating to the unity of the family and the sanctity of the family relation.  We regard with disfavor the gradual disappearance of these ideals in the community at large.  As a matter of fact, however, the family relation is not disturbed by the enactment of statutes conferring rights upon married women.  It is only when the ideal family relation has for some reason been disrupted that rights under the statute are asserted.  We must presume that the legislature meant exactly what it said, and when it said a married woman might bring an action as if she were a *feme sole* it meant bring an action against any person who did injury to her person or character even though that person were her husband; otherwise there was a limitation upon her rights which she would have had as a *feme sole*.  Nor is the conferring of such a right upon married women so out of harmony with the declared policy of the state as to lead necessarily to the conclusion that the legislature did not have that particular situation in contemplation.

The third proposition urged against so construing the statute as to give a wife a right of action against her husband for injury to her person or character is in reality a restatement of the second proposition in other terms.  It

may not be improper to observe that while there are many persons, particularly those of the older generation, who are genuinely alarmed at the statutory modification of the family status as it existed at common law, there are an equal if not a greater number who see in the emancipation of married women a necessary genuine social advance. We are not required to determine which view is correct. It is no doubt within the power of the legislature, guided by an enlightened sense of public need, to make such modifications of the marital status as it believes to be in the interest of the general welfare. When the legislative purpose has been declared in plain and unmistakable language it is not within the province of the court to interpose contrary views of what the public need demands, although as individuals the members of the court may hold convictions opposed to those of the legislature. It is only when the situation is such that the court is convinced that a particular result was not in contemplation of the legislature, and that had it been the statute would not have been enacted, that the court may properly supply limitations not found in the language of the statute.

As already indicated, we find the rule of construction laid down in this state to be that of a liberal interpretation of statutes belonging to the class under consideration, repeated declarations of public policy which accord with the language of the statute in its natural and ordinary meaning, and we find no consideration of public policy which leads us to the conclusion that the statute is not in accord with sound public policy.

We are well aware that a different result has been arrived at in other jurisdictions. See *Oken v. Oken,* 44 R. I. 291, 117 Atl. 357; *Maine v. James Maine & Sons Co.* 198 Iowa, 1278, 201 N. W. 20; *Bandfield v. Bandfield,* 117 Mich. 80, 75 N. W. 287; *Lillienkamp v. Rippetoe,* 133 Tenn. 57, 179 S. W. 628, L. R. A. 1916 B, 881; *Peters v. Peters,* 156 Cal. 32, 103 Pac. 219; *Thompson v. Thompson,* 218

U. S. 611, 31 Sup. Ct. 111; *Schultz v. Schultz,* 89 N. Y. 644; *Strom v. Strom,* 98 Minn. 427, 107 N. W. 1047.

On the other hand, the conclusion which we reach is sustained by the following cases among others: *Brown v. Brown* (1914), 88 Conn. 42, 89 Atl. 889; *Fitzpatrick v. Owens,* 124 Ark. 167, 186 S. W. 832, 187 S. W. 460; *Gilman v. Gilman* (1915), 78 N. H. 4, 95 Atl. 657; *Prosser v. Prosser,* 114 S. C. 45, 102 S. E. 787; *Roberts v. Roberts,* 185 N. C. 566, 118 S. E. 9, 29 A. L. R. 1479; *Harris v. Harris,* 211 Ala. 222, 100 South. 333; *Bushnell v. Bushnell* (1925), 103 Conn. 583, 131 Atl. 432.

Because this court has adopted the policy of following, in ordinary cases at least, the rulings of the United States supreme court in cases where there is no decision in the state of Wisconsin applicable to the situation (*Topolewski v. Plankinton P. Co.* 143 Wis. 52, 126 N. W. 554), we shall consider *Thompson v. Thompson, supra,* and to this may be added the further reason that it is typical of the decisions upon this point in other jurisdictions holding a contrary view. The statute of the District of Columbia contained the following provision:

"Married women shall have power to engage in any business, and to contract, whether engaged in business or not, and to sue separately upon their contracts, and also to sue separately for the recovery, security or protection of their property, and for torts committed against them, as fully and freely as if they were unmarried."

The wife began an action against her husband to recover damages for assault and battery, and it was contended by the plaintiff that under this statute the common-law relation of husband and wife was so far modified as to give her an action against him for tort committed by him upon her person or property. The court said:

"Married women are authorized to sue separately for 'the recovery, security or protection of their property, and for torts committed against her as fully and freely as if

she were unmarried.' That is, the limitation upon her right of action imposed in the requirement of the common law that the husband should join her was removed by the statute, and she was permitted to recover separately for such torts, as freely as if she were still unmarried. The statute was not intended to give a right of action as against the husband, but to allow the wife, in her own name, to maintain actions of tort which at common law must be brought in the joint names of herself and husband. . . .

"It must be presumed that the legislators who enacted this statute were familiar with the long-established policy of the common law, and were not unmindful of the radical changes in the policy of the centuries which such legislation as is here suggested would bring about. Conceding it to be within the power of the legislature to make this alteration in the law, if it saw fit to do so, nevertheless such radical and far-reaching changes should only be wrought by language so clear and plain as to be unmistakable evidence of the legislative intention. Had it been the legislative purpose not only to permit the wife to bring suits free from her husband's participation and control, but to bring actions against him also for injuries to person or property as though they were strangers, thus emphasizing and publishing differences which otherwise might not be serious, it would have been easy to have expressed that intent in terms of irresistible clearness. . . .

"We do not believe it was the intention of Congress, in the enactment of the District of Columbia Code, to revolutionize the law governing the relation of husband and wife as between themselves."

By the decision in this case the supreme court of the United States held that the effect of the enactment was merely to change the remedy which the wife already had at common law and to make it unnecessary for the husband to join in actions brought for torts committed against her. We shall certainly not argue that the statute of the District of Columbia is not subject to that construction, although we feel obliged to say with due deference that it is susceptible of a different construction. If, as is held in *Thompson v. Thompson, supra,* the statute did no more than

make it unnecessary for the husband to be joined as a party
in an action by the wife for torts committed against her,
the statute is not as broad in its terms as was the amend-
ment of 1881.   At common law the wife could not sue
alone for injuries to her person or property.   She was
obliged to join her husband, and if a judgment was re-
covered the proceeds of the judgment belonged to the hus-
band, not to the wife.   The amendment of 1881, now a
part of sec. 287.07, provided, on the other hand, that she
could maintain an action for injuries to her person or
character in her own name and that any judgment recovered
in such an action should be the separate property and estate
of the married woman and not of her husband.   *Thompson
v. Thompson, supra,* does not in terms declare to whom the
recovery belongs where a wife in her own name brings suit
to recover damages for injury to her person or character.
If under the statute of the District of Columbia it should be
held that the recovery belongs to the wife, then the statute
did something more than to give her the right to sue sepa-
rately, the reasoning of the court fails, and an exception is
created by the court on grounds of public policy.

In *Shanahan v. Madison,* 57 Wis. 276, 280, 15 N. W.
154, it was observed, in speaking of the amendment of 1881:

"As we construe the amendment, it was not to give to
the wife the right to recover in her own name what she could
previously recover in the name of herself and husband, but
to give to her, the same as though she were sole, a right
of action which she never before possessed, and to make the
judgment recovered therein, which, except for the amend-
ment, would have belonged to the husband, her 'separate
property and estate.'"

Comparing the right of the wife at common law (which
apparently was no more than the capacity to sustain the
injury, because she could not recover damages on account
of it, and when the damages were recovered in an action
in which her husband joined the damages belonged to the

husband and not to the wife) with the conceded right of the wife to recover under our statutes for injuries in a suit brought in her own name, the proceeds of the recovery belonging to her separate estate, the reasoning of the supreme court of the United States is not applicable to the amendment of 1881.

In the state of Wisconsin, where over and over again for more than fifty years the legislature has in the clearest and most explicit terms removed disabilities of the wife which existed at common law, conferred upon her rights of action against the husband which were totally unknown to the common law, and where it is held that a husband may maintain an action of replevin against the wife, or that the wife may sue the husband with respect to her property, we find no likelihood of the social order being shattered by holding that she has a right of action for injuries done to her person and character as well as to her property whether committed by the husband or third parties. As was observed by the supreme court of the state of Connecticut in *Brown v. Brown*, 88 Conn. 42, 89 Atl. 889, it is not until the domestic tranquillity has been disturbed and the family relation has broken down and the parties to the marital relation have lost all affection and respect for each other that resort will be had to courts. The court said:

"No greater public inconvenience and scandal can thus arise than would arise if they were left to answer one assault with another and one slander with another slander, until the public peace is broken and the criminal law invoked against them. We find nothing to warrant the claim that public policy is opposed to the existence of a cause of action for a personal tort in favor of husband or wife against the other spouse where the wife's identity is not merged in that of her husband."

If the forebodings of those who see in the modification of the marital status consequences destructive of our social institutions are realized in experience, the matter is within

Wait v. Pierce, 191 Wis. 202.    Dissent.

the control of the legislature, and we may well assume that succeeding generations will be as wise as we of this or preceding generations.  It is not necessary for us to determine what remains of the marital status as it existed at common law.  It must be true that when a man and woman marry, their reciprocal rights and duties are different toward each other than toward third persons. . The extent of the difference under the existing law must be developed by time and experience.  The undesirable consequences of permitting the wife to sue for alienation of affections and loss of the society of her husband pointed out by the court in *Duffies v. Duffies, supra,* did not follow the conferring of that right upon the wife, and it is quite as probable that those considerations which are urged in support of a narrower construction of this statute than that which we have given it are likewise not well founded.  In any event, as the supreme court of the United States has held, the matter of policy is in the first instance for the legislature and not for the court.

In view of these and other considerations, we hold that under the amendment of 1881 a wife may bring an action against her husband for injuries to her person or character the same as she might do as if she were a *feme sole*.  The cross-complaint therefore stated a cause of action against the husband and the demurrer should have been overruled.

.In view of the conclusion which we have reached, it will not be necessary for us to consider other questions raised in the briefs.

*By the Court.*—The order appealed from is reversed, and the cause is remanded with directions to overrule the demurrer and for further proceedings according to law.

The following opinion was filed June 21, 1926:

ESCHWEILER, J. (*dissenting*).  I think it is very clear that the legislature did not, either by ch. 99 of the Laws of

1881, sec. 246.07 (sec. 2345), or by ch. 529, Laws of 1921 (sec. 6.015), or by them together, intend to do away with the firmly established and well recognized common-law rule that neither spouse can sue the other, a child a parent, or a parent a child, for a tort committed by any one of such on the person of the other, and therefore I must' dissent. I also regret that this new breach in the walls surrounding and guarding the rights to the family relation, one of the trinity of rights for whose recognition and protection every government which can justify its existence is organized (1 Cooley, Torts (3d ed.) p. 27), is now being made, as it seems to me, by the judiciary.   If such a substantial change has to come, I should much prefer to see it done under the legislative banner and by clear and categorical declaration.

It is manifest that the majority opinion, while only declaring that a wife may sue the husband, must nevertheless necessarily result in the conclusion that a husband may likewise sue the wife, and, as a necessary corollary, to permit of lawsuits by a child against a parent or a parent against a child, because it abolishes the common-law doctrine, based as it was upon the idea of the preservation of the family and a refusing to recognize tort liabilities between its members.   It cannot logically hereafter be held that, under these statutes, the wife only may sue for such tort and the husband not, for then she has been granted not equal but superior rights to the male.

That no common-law right of action existed in favor of either spouse for damages for such torts is unquestioned. 1 Cooley, Torts (3d ed.) p. 474.   It was so stated in *Thompson v. Thompson,* 218 U. S. 611, 615, 31 Sup. Ct. 111, and so held in *Peters v. Peters,* 156 Cal. 32, 103 Pac. 219, 23 L. R. A. N. s. 699, in an action by a husband against a wife who shot him, and in *Lillienkamp v. Rippetoe,* 133 Tenn. 57, 59, 179 S. W. 628, L. R. A. 1916 B, 881, by

a divorced wife for an assault and battery by husband during coverture.

The same rule applies to tort actions by unemancipated minor children against the parent.  1 Cooley, Torts (3d ed.) p. 493.  So held in *Small v. Morrison,* 185 N. C. 577, 118 S. E. 12, 31 A. L. R. 1135 (with note at p. 1157), which case reviews many others.   Also in *Matarese v. Matarese* (R. I.) 131 Atl. 198.

That there can be no logical distinction between a liability for wilful or intentional injury and for that resulting from mere negligence is demonstrated in *Roberts v. Roberts,* 185 N. C. 566, 118 S. E. 9, 29 A. L. R. 1479.

Many of the decisions on this subject comment upon the remedies afforded under the common law and the procedure of today through the power of the state to control the abuses of an infant in the family relationship by criminal proceedings and supervisory control over its custody; and for the spouse, by criminal proceedings and by divorce. To illustrate: a divorce proceeding, affording a broader and more adequate remedy than the common law, is the exclusive remedy, so far as barring dower is concerned, of the husband of an adulterous wife, as held in *Davis v. Estate of Davis,* 167 Wis. 328, 167 N. W. 819.  See, also, *Thompson v. Thompson,* 218 U. S. 611, 619, 31 Sup. Ct. 111.

The construction by the majority of ch. 99 of the Laws of 1881, authorizing as it must all kinds of tort actions, those based upon mere negligence as well as those within the field of wilful injuries, appears to be an encroachment upon the field covered by and included within the remedies provided for in divorce proceedings.   Though marriage is defined under our statutes, sec. 245.01, so far as its validity in law is concerned, as a civil contract, yet the moment such contract is entered into a status between the parties arises of a distinct and exclusive nature.  *State v. Duket,* 90 Wis.

272, 276, 63 N. W. 83; *Lyannes v. Lyannes,* 171 Wis. 381, 389, 177 N. W. 683. Many of the rules applicable to contracts in the ordinary meaning of the term are necessarily excluded from application to the marriage contract and status. On the same day that the opinion here is handed down, this court holds in *Ableman v. Holman,* 190 Wis. 112, 208 N. W. 889, that the contract embodied in a promise of marriage is so unique and outside of the field of contracts that there cannot be recognized a cause of action for inducing its breach; and in *Wells v. Talham,* 180 Wis. 654, 194 N. W. 36, the marriage contract is held immune from attack where entered into by reliance upon false representations; and all this in spite of ch. 99 of the Laws of 1881, *supra.*

If, as now held by the majority opinion, the common-law doctrine of refusing judicial remedy by actions of tort for injuries to the person of one spouse is abrogated in the particular instance presented here, it must necessarily be abrogated entirely. It cannot afterwards be left to the courts to so slice it up as to recognize it as still alive for certain classes of injuries to the person of the spouse and as no longer alive for other classes of such injuries. The standard having been now fixed as of legislative creation and determination, no method is or probably well can be pointed out for judicial limitation or discrimination. The common law on this subject must be considered as all swept away or not at all; no half-way stopping place is indicated.

The uninvited kiss, no matter how cold and chaste, upon the nonconsenting alabaster *feme sole* brow is an assault and battery, and substantial damages may be awarded for such. *Craker v. C. & N. W. R. Co.* 36 Wis. 657, where a verdict of $1,000 (p. 661) was upheld. Under the present construction by the majority of the rights of the married woman, such form of assault and battery by a present-day husband must necessarily result in giving a right of action to the present-day wife. The surrender of his former im-

munity is hardly compensated by the possibility of recovering, under the new dispensation, monetary damages by an overkissed husband.

It would be hard to point out a more firmly rooted doctrine in the prior decisions of this state than that the common law, in existence here under the constitutional recognition by sec. 13, art. XIV, is not to be done away with, altered, or modified unless the legislative intent so to do is clearly evidenced, and that the use of broad and general language is not necessarily indicative of such intent.   It is so said by this court as late as *Kappers v. Cast Stone Const. Co.* 184 Wis. 627, 633, 200 N. W. 376; *Sullivan v. School Dist.* 179 Wis. 502, 506, 191 N. W. 1020; and as stated in *Orton v. Noonan,* 29 Wis. 541, 545, such purpose, viz. "to abrogate or change any rule or principle of the common law, must be clearly expressed so as to leave no doubt of the intention of the legislature."

The value of and importance attached to the fundamental doctrines of the common law so under protection of our constitution has been steadfastly recognized, *Coburn v. Harvey,* 18 Wis. 147, holding in force the landlord's common-law right of distress for rent (abolished by ch. 74 of the Laws of 1866) ; the extent to which the common-law rights of property are to be protected under this constitutional provision is well illustrated in the often discussed and criticised case of *Huber v. Merkel,* 117 Wis. 355, 94 N. W. 354, upholding the right of a property owner to drain by his own well the prior existing well on his neighbor's property (p. 363), and this even in the face of a prohibiting statute (p. 365) ; its applicability to conditions of the present day is well set forth by Mr. Justice TIMLIN in *Metropolitan Cas. Ins. Co. v. Clark,* 145 Wis. 181, 182, 129 N. W. 1065; its rules, formulated long ago and at a time when railroads were not even dreamed of, have been held sufficient unto themselves to require a railroad to pay the costs occasioned

by its construction of a new way across a public highway. *Superior v. Roemer,* 154 Wis. .345, 356, 141 N. W. 250. In this view this court has been until now in accord with the United States supreme court as is expressed in *Thompson v. Thompson,* 218 U. S. 611, 618, 31 Sup. Ct. 111.

It is not and cannot be contended that there is express language so abolishing the common law, either in the amendment by ch. 99 of the Laws of 1881, which, after forty-five years of innocuous desuetude in that regard, is now declared to have such potent; though so long latent, effect in overturning that which has been all these years an unquestioned doctrine by bench and bar, or by ch. 529 of the Laws of 1921. The conclusion reached by the majority must therefore be based solely upon construction,—a construction, moreover, which in creating new rights for the wife also necessarily creates new rights for husband and minor child.

Ch. 99 of the Laws of 1881, upon which is placed the credit or blame for this substantial innovation, though entitled "An act to amend section 2345, . . . giving married women the right to sue and maintain an action," and adding the provision cited by the majority, was, in the case decided in 1883 upon which so much stress has been laid, of *Shanahan v. Madison,* 57 Wis. 276, 15 N. W. 154, there described (p. 280) as an amendment that perhaps would have been more germane to secs. 2342 and 2343, defining a married woman's rights as to property, than to the section to which it was added, defining rights of action and remedies as to her separate property, and also there declared as being intended to take entirely from the husband the right and control of any action for any injury to the person or character of the wife or in any judgment recovered in such action. To my mind this clearly indicates that the court at that day construed this very amendment as being intended to remove the common-law disability of a married woman to sue in her own name and hold judgments so recovered in

her own name, but only as to such causes of action as were theretofore recoverable with or through the husband, and not, as now construed, to effect such a fundamental change in the common law as to create a new and wide field of remedies for and against members of the family unit.

After this legislation in 1881 it was evidently still the legislative view, as it was the judicial view (see *T. T. Haydock Carriage Co. v. Pier*, 74 Wis. 582, 590, 43 N. W. 502), that in spite of the broad language in ch. 99 of the Laws of 1881, *supra*, a married woman could not act as a trustee, executrix or administratrix, or as guardian (except as theretofore provided as general guardian of her own children by a former husband), for by ch. 68 of the Laws of 1889 her rights and powers in that regard were extended. Then came *Duffies v. Duffies*, 76 Wis. 374, 45 N. W. 522 (1890), expressly passing upon this ch. 99 of the Laws of 1881 (pp. 384, 385), and holding that a wife could not maintain an action for alienation of the husband's affections. The general public policy of such actions is there discussed, and then by ch. 17 of the Laws of 1905 this very section was again amended by adding to the general language permitting her to "bring and maintain an action in her own name for any injury to her person or character the same as if she were sole," the specifically limited addition that "She may also bring and maintain an action in her own name, and for her own benefit, for the alienation and the loss of the affection and society of her husband." It is quite significant, with the attention of the legislature having been directed in the *Duffies Case* to this precise statute and after its amendment by ch. 99 of the Laws of 1881, that if it was the legislative intent to abrogate the established common-law doctrine entirely as to a married woman suing for torts, the 1905 amendment should be specifically limited as it was.

It is interesting to note that under the New York statutes it was held as early as 1889 in *Bennett v. Bennett*, 116 N. Y.

584, 23 N. E. 17, that the wife might sue another woman for alienating the husband's affections; and in *Oppenheim v. Kridel,* 236 N. Y. 156, 140 N. E. 227, 28 A. L. R. 320, such right was extended to an action for criminal conversation, and upon the reasoning that, the husband having a right of action of that nature, the married women statute permitted such an action by the wife (p. 164), and quoting (p. 165) their present statute, clearly as far reaching as ours, to the effect that "a married woman has a right of action for an injury to her person, property or character, or for an injury arising out of the marital relations, as if unmarried." Yet it was held in *Schultz v. Schultz,* 89 N. Y. 644 (1882), by a memorandum opinion, that the wife had no cause of action for assault and battery committed by the husband; and such is the unquestioned law of that state to the present time, as appears from *Abbe v. Abbe,* 22 App. Div. 483, 48 N. Y. Supp. 25, and references in *Thompson v. Thompson,* 218 U. S. 611, at p. 619, 31 Sup. Ct. 111; 6 A. L. R. 1038; 33 A. L. R. 650.

No aid can properly be given to the conclusion of the majority here by sec. 6.015 (ch. 529, Laws of 1921), because from its very title it was "to remove discriminations against women and to give them equal rights before the law," and clearly ought not to be construed as creating new rights or superior rights. Its purpose was to remove supposed fetters, not to forge new ones.

I think what is said in *Thompson v. Thompson,* 218 U. S. 611, 31 Sup. Ct. 111, in the majority opinion covering the subjects of any such right of action and the rule of statutory construction involving a conflict with common-law principles, as well as to the remedy that is afforded the member of the family for the abuse of that relationship by the other through the criminal or divorce courts (p. 619), is entitled to great weight and deference.

To the list of cases cited in the majority opinion holding *contra* to the views there expressed and upon statutes

similar to ours may be added *Faris v. Hope*, 298 Fed. 727, denying to the wife a suit for libel against her husband; *Rogers v. Rogers*, 265 Mo. 200, 177 S. W. 382; *Matter of Badger*, 286 Mo. 139, 226 S. W. 936, 14 A. L. R. 286.

I am authorized to state that Mr. Chief Justice VINJE and Mr. Justice DOERFLER concur in this dissent.

The following opinion was filed November 9, 1926:

### On motion for rehearing.

ROSENBERRY, J.   The attention of the court is called to the fact that the opinion did not dispose of the second contention made by the respondent in support of the order appealed from, which is that even if it be held as it now is held that a wife may maintain an action against her husband for a tort, nevertheless the copartners cannot, by way of cross-complaint, maintain an action against *G. E. Wait,* the husband of the plaintiff, for contribution because such right does not come into existence until one of two obligors has discharged more than his equitable share of the common obligation, and for that reason there is no cause of action against the defendant *Wait* in favor of the partners.

The origin of the right of contribution and the history of its growth and development is set forth at length in *Estate of Koch,* 148 Wis. 548, 134 N. W. 663.   What is said there relates to the right of contribution as between common obligors under a contract.   At the time *Estate of Koch* was decided (1912), the right of contribution as between joint tortfeasors was not recognized in this state. It was given recognition in *Ellis v. C. & N. W. R. Co.* (1918), 167 Wis. 392, 167 N. W. 1048.   See, also, "Contribution Between Joint Tortfeasors," 1 Marquette Law Review, 141; "Contribution Between Persons," 12 Harvard Law Review, 176.

The right of contribution is founded upon principles of equity and natural justice and does not spring from con-

tract. Whether the common obligation be imposed by contract or grows out of a tort, the thing that gives rise to the right of contribution is that one of the common obligors has discharged more than his fair equitable share of the common liability.

The right to contribution was first recognized and enforced in courts of equity, and for a long time the right could not be enforced in a court of law. *Adams v. Hayes,* 120 N. C. 383, 27 S. E. 47; *Couch v. Terry's Adm'rs,* 12 Ala. 225; *Chipman v. Morrill,* 20 Cal. 130; *Boutin v. Etsell,* 110 Wis. 276, 85 N. W. 964.

In North Carolina common-law courts declined jurisdiction in cases of contribution until it was conferred upon them by statute. *Sherrod v. Woodard,* 15 N. C. 360. The right to contribution being the same in contracts and in tort as limited in the case of *Ellis v. C. & N. W. R. Co.,* the right to bring in parties, where the right of contribution is claimed, is in its nature the same whether the action be brought upon contract or sounds in tort. Where the tort action is one in which the right of contribution may exist, the court, in the exercise of its discretion as to whether or not parties should be brought in, may be moved by different considerations than would move it in contract cases; but the right is in its nature the same.

The contention made by respondent in this case that one joint tortfeasor has no right of action against another joint tortfeasor until he has discharged more than his equitable share of the common obligation is sound. It is equally well settled that a cross-complaint must state a cause of action (*First Nat. Bank v. Frank,* 131 Wis. 416, 111 N. W. 526), and is subject to demurrer if it does not. This, however, does not completely dispose of the right of the copartners to set up the matters contained in their cross-complaint, in which they allege that their codefendant, *G. E. Wait,* was guilty of negligence which directly and proximately contributed to the plaintiff's injury, and pray that "in the event

that they, the said *George P. Pierce* and *Andrew Borenz* and the said *G. E. Wait,* are jointly found guilty of actionable negligence, then the defendants *George P. Pierce* and *Andrew Borenz* have judgment against the said *G. E. Wait* for one half of the amount awarded to plaintiff and paid by defendants *George P. Pierce* and *Andrew Borenz.*" The right of the copartners to set these matters up by way of a cross-complaint is derived from sec. 263.15, formerly sec. 2656a, and sec. 260.19, formerly sec. 2610. These sections were an innovation upon the rules of the common law relating to pleadings. Speaking of these sections, in *Hemenway v. Beecher,* 139 Wis. 399, 121 N. W. 150, the court said:

"Sec. 2610, Stats. 1898, relating to the interpleading of additional parties, and sec. 2656a of the same statutes, relating to cross-complaints and proceedings where controversies arise between defendants, are very broad in their terms and were intended to give courts plenary powers not only to call in new parties, but to mold the pleadings and dispose of all branches of a controversy in one action after having obtained jurisdiction of the necessary parties. The idea in both sections is to enable the court to grasp all the issues germane to the main controversy, whether arising between the plaintiff and the defendant, or between defendants, or between a defendant and an outside party, and dispose of them in one and the same action, and thus avoid circuity of action and multiplicity of suits. This purpose should be encouraged rather than discouraged by the courts. It is in line with the idea that courts are formed to decide controversies without unnecessary delay and without undue refinement as to pleading or procedure so long as the parties are before the court and the issues understood."

The interpleader statute appears as sec. 22 of ch. 122 of the Statutes of 1858. By ch. 219 of the Laws of 1915 the following provision was added:

"A defendant who shows by affidavit that if he be held liable in the action he will have a right of action against a third person not a party to the action for the amount of the recovery against him, may, upon due notice to such person

and to the opposing party, apply to the court for an order making such third person a party defendant in order that the rights of all parties may be finally settled in one action, and the court may in its discretion make such order. This section shall be liberally construed in order that, so far as practicable, all closely related contentions may be disposed of in one action, even though in the strict sense there be two controversies, provided the contentions relate to the same general subject and separate actions would subject either of the parties to the danger of double liability or serious hardship."

The legislature of 1913 requested the supreme court to suggest such changes "in the Code practice of the state as will simplify it, relieve it of technicalities and promote the ends of justice, and to report their suggestions to the legislature which convenes in 1915." Jt. Res. No. 30, 1913. The suggestions made by the court pursuant to this request are embodied in ch. 219 of the Laws of 1915.

Whether or not a third person not a defendant should be made a party under the provisions of the section as amended rests within the sound discretion of the court. *Ertel v. Milwaukee E. R. & L. Co.* 164 Wis. 380, 160 N. W. 263. In that case the trial court denied the application and its determination was approved by this court. There was a similar holding with respect to the provisions of sec. 263.15 in *Schmuhl v. Milwaukee E. R. & L. Co.* 156 Wis. 585, 146 N. W. 787. In this connection the case of *Bakula v. Schwab,* 167 Wis. 546, 168 N. W. 378, deserves attention. In that case plaintiff brought suit against Schwab on account of personal injuries sustained in a collision. Upon motion of Schwab, Wilkinson was made a party defendant and the action proceeded to trial in that court against both defendants. No cross-complaint was served by either defendant and there was no issue joined between them. At the close of the evidence the court directed a verdict in favor

of the defendant Wilkinson, the jury found in favor of the
plaintiff, and judgment was rendered against Schwab, from
which he appealed, claiming the right to have a review of
the question of whether or not a verdict was properly di-
rected as to Wilkinson.   It was held that the judgment dis-
posed of all of the issues in the action and therefore to be
one in substance in favor of Wilkinson.   The question con-
sidered upon the appeal, the court being of the opinion that
there was sufficient evidence in the case to take the question
of Wilkinson's liability to the jury, was whether Schwab
had the right to have the judgment in favor of Wilkinson
reversed, and it was held that Schwab did not have such
right because as between Schwab and Wilkinson the judg-
ment in favor of Wilkinson was not *res adjudicata.*   Lan-
guage is used in the opinion rather broader than the issues
in the case warrant.   It is said: "We have been cited to no
case in which it has been held that a judgment rendered in
an action against separate tortfeasors is *res adjudicata* even
upon the question of the liability of the defendants to the
plaintiff in a subsequent action between the tortfeasors," and
it was held that the rule applying in contract cases as to the
liability of codefendants did not apply in tort actions.   As
we have seen, the right of one joint tortfeasor to contribu-
tion from another joint tortfeasor arises out of a common
liability.   It is only when they have been subjected to a
common liability and one joint tortfeasor has paid more than
his equitable share of the common obligation that the right
of contribution arises.   To hold that under such circum-
stances a judgment which establishes the common liability
is not *res adjudicata* upon that question is to ignore the prin-
ciple upon which the right to contribution rests.   In the
*Bakula Case, supra,* there was no cross-complaint and no
issue was made between the codefendants.   It was therefore
held that the defendant Schwab was not concluded by the

judgment in Wilkinson's favor.  So far as the *Bakula Case* holds that where one joint tortfeasor discharges more than his equitable share of a liability resting upon him and another joint tortfeasor by a single judgment, the question of liability of the other joint tortfeasor to the plaintiff is not *res adjudicata,* it must be and is modified.

In this case one joint tortfeasor (the liability of the partners being a single liability as the result of the negligent act of their servant) seeks to have determined his liability against another joint tortfeasor arising out of the very subject matter of the plaintiff's action.  If the plaintiff's injuries are due solely to the negligence of the defendant *G. E. Wait,* then the copartners are not liable at all.  If the plaintiff's injuries are due solely to the negligence of the copartners, *Wait* is not liable at all; but if the plaintiff's injuries are due to the negligent acts of both of a kind which are within the rule laid down in the *Ellis Case* there may be contribution, and when one discharges more than his equitable share of the liability the right of contribution will come into existence.  The copartners seek to have all of these questions determined in this action.  Having regard for the spirit as well as the letter of the statute, this case presents a situation which was well within the contemplation of the amendment of 1915.  The amendment to the interpleader statute clearly authorizes the settlement of issues between parties which are contingent upon the future action of the parties, as for instance where one defendant, if he be compelled to pay, will have a claim over against a third party; in such a case the third party may be brought in and subjected to liability.  While it is true that one joint tortfeasor will not have a right of action over against his co-tortfeasor for the amount of the recovery, but only for one half of the amount in the event that there are two, he is certainly well within the statute because the whole must include an amount less than the whole.  The statute would

have been clearer in that respect had it said for the amount of the recovery or some part thereof.

The decision in the *Hemenway v. Beecher Case, supra,* was written by Mr. Chief Justice WINSLOW, who took an active part in preparing ch. 219, and he must have had clearly in mind the objects and purposes of the amendment.

In the case of *Liebhauser v. Milwaukee E. R. & L. Co.* 180 Wis. 468, 193 N. W. 522, cited as sustaining respondent's position, Kroscher sought to litigate in that action his independent claim against the electric railway company, one which in no manner affected the subject matter of the plaintiff's action. The events which gave rise to plaintiff's cause of action and to Kroscher's cause of action were contemporaneous but had not the slightest legal relation one to the other. Whether the railway company was liable to Kroscher for damages which he sustained had not the remotest bearing upon the plaintiff's cause of action or the rights of the defendants as between themselves on account of liabilities which might be found to exist in favor of the plaintiff against both defendants. It was held that Kroscher could not, by way of cross-complaint, litigate his independent claim against the electric company in plaintiff's action.

*Fisher v. Milwaukee E. R. & L. Co.* 173 Wis. 57, 180 N. W. 269, in effect rules this case. In that case the defendant company sought to make Rumph, the physician who attended the plaintiff, a party, claiming that the injuries were in whole or in part due to the negligent treatment by the defendant Rumph, and it was held that the cross-complaint stated a cause of action in favor of the light company against Rumph under the provisions of sec. 2610. and that Rumph was properly brought in.

In this case the copartners and *Wait* may be held to be, under the allegations of the cross-complaint, joint tortfeasors. The partners asked to have *Wait* made a party in order that "the entire controversy may be settled in one

action," and the court quite properly, in the exercise of its discretion, held that *Wait* should be made such party. While it is true the partners have no complete cause of action against *Wait* until they have been legally compelled to satisfy more than their equitable share of a common liability, no greater difficulty exists in providing for the ultimate settlement by a contingent judgment of all controversies arising out of the action than exists in a like case where the defendant, if held liable to the plaintiff and compelled to discharge his liability, will have a claim over against a third party, and that third party is brought in and subjected to liability in the same action. If it be held that the partners and the defendant *Wait* are joint tortfeasors, and if each of the joint tortfeasors pays his equitable share of the judgment, no further action will be necessary. On the other hand, if one of the joint tortfeasors is compelled to pay more than his equitable share, no reason exists why his rights against the other tortfeasor should not be settled in this action contingent upon such payment.

Our conclusion upon this branch of the case results in no modification of the original mandate. No costs will be allowed, except the moving party shall pay the clerk's fees.