[Civ. No. 3856. First Appellate District, Division One.—August 15, 1921.]

MATILDA J. DUNBAR, Respondent, v. SAN FRAN-CISCO–OAKLAND TERMINAL RAILWAYS (a Corporation), et al., Appellants.

[1] NEGLIGENCE — INJURIES TO WIFE — CONTRIBUTORY NEGLIGENCE OF HUSBAND—RECOVERY BARRED.—In an action for damages for personal injuries sustained by the plaintiff in a collision between a street-car of the corporate defendant and a horse-drawn vehicle driven by the husband of plaintiff, the latter cannot recover if the negligence of her husband contributed proximately to her injury, regardless of whether or not she was in his care.

[2] ID.—WHEN QUESTION FOR COURT OR JURY.—Negligence ordinarily is a question for the jury to determine from the facts and fair deducible inferences; and it is only when the facts are without dispute or the deductions inevitable that the court can say that no negligence was shown.

[3] ID. — EXERCISE OF VIGILANCE BY HUSBAND — FAILURE TO OBSERVE DANGER — EVIDENCE — CONTRIBUTORY NEGLIGENCE. — In this action for damages for personal injuries sustained by the plaintiff in a collision between a street-car and a horse-drawn vehicle driven by

1. Imputability of contributory negligence of one spouse to other, note, **Ann. Cas.** 1912A, 647.

her husband, the latter, in nearing the tracks of the defendant street-car company, in a locality with which both he and plaintiff were familiar, having used his eyes and ears to ascertain if any cars were approaching, it could not be said as a matter of law that he was guilty of contributory negligence because he failed to see the approaching car or, having seen it, miscalculated the danger. His vigilance did not have to be extreme and constant.

APPEAL from a judgment of the Superior Court of Alameda County.   T. W. Harris, Judge.   Affirmed.

The facts are stated in the opinion of the court.

W. H. Smith, A. L. Whittle, Morrison, Dunne & Brobeck and Chapman & Trefethen for Appellants.

Ostrander & Carey, Sullivan & Sullivan and Theo. J. Roche for Respondent.

Gibson, Dunn & Crutcher, Norman S. Sterry, Frank Karr, R. C. Gortner and W. R. Millar, *Amici Curiae.*

KERRIGAN, J.—This is an action for damages for personal injuries sustained by the plaintiff in a collision between a street-car of the corporate defendant and a horse-drawn vehicle driven by the husband of the plaintiff. The collision occurred in Oakland at the junction of Grand Avenue and El Embarcadero, a thoroughfare emerging from said avenue. The first-named street runs in an easterly and westerly direction, and the other approximately north and south. The plaintiff alleges in her complaint that she was injured as the result of the negligence of the defendants in operating a street-car at said junction at an excessive and dangerous rate of speed and without giving any warning of its approach by gong or otherwise. Both the corporation and its codefendant—the motorman driving said car—deny the negligence charged or any negligence; and as a separate defense they allege that the plaintiff's injuries were the result of her contributory negligence consisting in the fact that she failed to ascertain whether or not a street-car was approaching before attempting to cross the car track, or to warn the driver of the horse and buggy to do so, and that the plaintiff failed and neglected

to display lights on said buggy, or to cause said vehicle to be driven on the right-hand side of the highway, as required by law. The cause was tried by a jury, and resulted in a judgment for the plaintiff in the sum of $20,000. The defendants appeal.

The only questions in the case now presented are: (1) Was the plaintiff guilty of contributory negligence? and (2) If so, did the defendants have a last clear chance to avoid the collision?

The accident happened on the second day of August, 1916, at 9 o'clock at night. W. H. Dunbar and his wife, the plaintiff, were in an open one-horse buggy. Dunbar had driven the horse along what is called Lake Boulevard and into El Embarcadero intending to cross the car tracks on Grand Avenue to reach the north side of that street and then proceed westerly. As he was approaching said car tracks an electric car of the corporate defendant was coming from the west on the right-hand track at a speed, according to the testimony for plaintiff, of thirty miles an hour. Dunbar, without stopping or changing his course and going at the rate of three or four miles an hour, drove upon the track, and while in the act of crossing, his vehicle was struck by said car, resulting in serious injuries to the plaintiff. The eyesight and hearing of Dunbar and his wife were good; and while Dunbar looked up and down the track he states that he neither heard nor saw the approaching car. Mrs. Dunbar remembers nothing of the accident, not even the fact that she was driving with her husband that evening, nor the occurrences of previous days. Dunbar and his wife were very familiar with the conditions of the locality where the accident occurred. The former was called as a witness, and testified that coming into El Embarcadero he drove on the right-hand side thereof. He jogged along at the rate of seven or eight miles an hour to within fifty or one hundred feet of the track; he then slackened up into a "roll," which is a little faster than a walk, and at least four miles an hour. He looked to the left and then to the right when he was forty or fifty feet from the track, and observed no car coming. He looked again when he was ten or twelve feet from the track and still saw no car. He knew nothing of the danger until he heard his wife scream, followed immediately by a crash,

when he became unconscious. He did not see any street-car nor the lights of any, headlight or otherwise, or hear a bell or the rumbling of the heavy car at any time. He had a clear view of Grand Avenue to the left. When he looked in that direction there was nothing to obscure his view. From the time he entered El Embarcadero to the moment he heard his wife scream she did not give any expression of fear or caution, either by gesticulation or word, that he could remember. The horse was gentle and obedient and could be quickly stopped. The car struck the left front wheel of the buggy. The horse escaped injury. The buggy was equipped with a light fastened on the left-hand side with red, white, and blue lights—red on the left, blue on the right, and white in front.

Other witnesses to the accident, called on behalf of the plaintiff, were four occupants of an automobile which, like the plaintiff's vehicle, was proceeding along El Embarcadero toward Grand Avenue, and which was thence to proceed easterly along the right-hand side of Grand Avenue without crossing the track. The buggy had passed the automobile, heading for the track, and the occupants of the latter, fearing a collision, stopped their car about forty feet from the track and waited to see what might happen. They were William Glavin, Helen Glavin, W. J. Thorburn, and Helen Thorburn. They testified that they saw no lighted lamp on the buggy; that the street-car was running at about thirty miles an hour from the moment they perceived it until the collision; that they heard no warning of the approach of the car; that the speed of the car was not slackened until after the impact, and that the hind wheels of the buggy were struck by the car. William J. Thorburn also testified that the horse approached the track trotting and, as he neared it, slowed down, crossing it walking. The car was 150 feet away when he first saw it. When the automobile was stopped the horse's head was about five feet from the nearest rail. At that moment the car was about 150 feet away from the horse. At that time he saw the headlight of the car, which was what first called his attention to its approach. The light clearly illuminated the automobile. The light from the car from the moment he first perceived it gradually turned in toward the track as the car turned west. It might have illuminated the track

for thirty, forty, or fifty yards. He did not pay much attention to it. It did not shine on the track as it came around the bend. At no time did he see it playing upon the buggy. Dunbar was four or five feet from the track when he started to walk his horse across it. At this time the light was shining on the automobile. The street-car continued 140 feet, about, after it struck the buggy.

Mrs. Helen Thorburn testified that when the automobile stopped the horse was just going on the track. At that time the car was a little farther than eighty-four feet away. The horse and buggy were on the track when the car came around the bend. The car was lighted and had a burning headlight. The horse trotted until he got within about ten feet of the track, and then he walked. At that time she had not seen the car. When the horse was ten feet away from the near rail the car was seventy-eight feet away. While the car was going that seventy-eight feet the horse walked the ten feet and crossed from one rail to the other before the collision. After the buggy was struck the car stopped in about two lengths.

William Glavin, driver of the automobile, testified that when he first observed the car it was fifty or seventy-five feet from the horse and buggy, which, in their turn, were ten or fifteen feet from the track. The front of the car was not lighted, but it was equipped with a burning headlight. Referring to that part of his testimony where he said the car was about fifty or seventy-five feet from the buggy when he first observed the car, he stated that he must have misunderstood the question, and testified in that behalf that the car at that time was 200 feet south of El Embarcadero. From his testimony we quote: "It looked just about 200 feet to me, that point, but I would not know just how to mark it here. I don't know the distance from that curve there.

"Q. But the horse and buggy had 110 feet to go while the car had from a point 200 feet south of the El Embarcadero up to the point of the accident to go, didn't it?

"A. Yes, if that is right, but I don't know whether it is just 110 feet or how many feet it is.

"Q. Well, it is as accurate as anything you can give, isn't it?

"A. I am not accurate on the measurements, but I could go over there and show you spot for spot on the scene of the accident."

There only remains of the occupants of the automobile Mrs. Helen Glavin. She testified that the car stopped about three car-lengths after it struck the buggy. She noticed its headlight when it came around the corner. She saw no lights that illuminated the horse and buggy.

J. M. McCarthy, a witness called by the plaintiff, was a motorman in the employ of the defendant. He testified to having made three tests at the point of the collision to ascertain within what distance a car could be stopped by applying emergency pressure; that running 20 miles an hour it could be stopped in 105 feet; at 22½ miles an hour, 164 feet; at 25.7 miles an hour, 225 feet.

W. J. Griesbaum testified that he had had three years' experience in operating electric cars as a motorman; and that a car running at thirty miles an hour, under the circumstances present in this case, could be stopped in seventy-five or eighty feet.

Defendant Way, first called as a witness for the plaintiff, testified that, according to his best recollection, the speed of his car 100 feet from the point of the accident was twenty miles an hour, and when he was fifty feet away he had slightly checked it; that at 100 feet from that point he was ringing the gong as a signal to the automobile, and that it was at this time that he checked the speed of his car as a precautionary measure; and then when he perceived that the automobile had stopped he released the brakes. As a witness for himself and codefendant he testified that when he first saw the buggy it was revealed by the headlight of his car; that it was on the track and about a car's length away; that he stopped the car in about its length, which was the shortest possible stop. On his cross-examination he testified that he saw Dunbar lean forward to urge his horse, but at that time the car was virtually upon him. When he leaned forward the horse lunged. The headlight enabled him to distinguish objects from 150 to 200 feet away. A number of photographs of the site of the accident were introduced in evidence by both sides.

It is not claimed that the evidence fails to support the verdict of the jury that the defendants were guilty of negligence, but it is earnestly contended that upon a full and fair consideration of all the evidence favorable to the plaintiff, and the logical deductions to be drawn therefrom, it appears that the plaintiff was guilty of contributory negligence, and that it does not appear that the defendants had a last clear chance of avoiding the collision after discovering that the plaintiff was in a position of peril. We will discuss both of these questions together.

[1] Under the facts of the case, if plaintiff's husband was guilty of negligence, such negligence is also imputable to the plaintiff. For a personal injury to a wife, who at the time of the injury is in the care of her husband, the latter's contributory negligence bars the right of recovery. But, regardless of whether or not she was in his care, if his negligence contributed proximately to her injury the law will not permit him to benefit by his own wrong, and no recovery will be permitted, for under the law in this state a recovery for her injuries is community property, in which he shares and over which he has control. (*Basler* v. *Sacramento Gas & El. Co.*, 158 Cal. 514, 518, [Ann. Cas. 1912A, 642, 111 Pac. 530].) There are some inconsistencies in the evidence for the plaintiff; but we cannot say that upon the whole evidence bearing upon the subject of negligence the jury was bound to conclude that the plaintiff failed to use reasonable care in attempting to cross the track. We cannot hold as a matter of law that the plaintiff was guilty of contributory negligence. [2] Negligence ordinarily is a question for the jury to determine from the facts and fair deducible inferences. It is only when the facts are without dispute or the deductions inevitable that the court can say that no negligence was shown. [3] We cannot say as a matter of law that Dunbar should have seen the approaching car. If in going forward he used his eyes and ears, and either failed to see or, having seen, miscalculated the danger, he may still have been free from fault. His vigilance does not have to be extreme and constant. (*Clark* v. *Bennett*, 123 Cal. 275, [55 Pac. 908].) Dunbar took observations when he was forty or fifty feet away from the track, looking both to the right and the left. At that time he was driving seven or eight

miles an hour. He again looked both ways when he was ten or twelve feet from the track. At that moment he was driving three or four miles, or seven or eight miles, an hour; and at neither of those times did he see or hear the oncoming car. In the meantime the car was coming around a curve in the track at the rate of thirty miles an hour, giving no notice of its presence by the ringing of a gong or otherwise. While the interior of the car was lighted its front was dark, except for the headlight, but it is probable that on account of the curve in the track this was not visible to Dunbar soon enough to enable him to perceive the danger of continuing on his course. The nearer his position to the track, the shorter was his range of observation to the left. If we bear in mind that the headlight of the electric car threw its reflection on the automobile, forty feet from the track, before it illuminated the buggy; that it was this headlight becoming visible as the car came around the curve which first attracted the attention of some of those in the automobile; that its rays played on them first and only later warned Dunbar of his danger; that when William J. Thorburn first saw the lighted car it was 150 or 200 feet away from the point of collision, and that a car going thirty miles an hour would cover forty-four feet in a second, so that a vehicle proceeding at a walk in the path of such car could cover but a short distance between the moment when the approach of the car became known and that in which they must inevitably meet if each should continue on its course unchecked, it becomes sufficiently clear that the question whether or not Dunbar failed to exercise ordinary care in undertaking to cross the car track as he did was one for the determination of the jury. Moreover, the jury might well have inferred that the buggy having been equipped with a lighted lamp on its left side, the motorman ought to have seen it in time to have averted the collision; or, independent of the lamp on the buggy, if the headlight on the car threw its illuminating rays far enough to enable the plaintiff to know of its approach in time to remain in a position of safety, as claimed by the defendants, the jury might well conclude that those rays from the headlight were sufficient to enable the motorman to see the buggy and its predicament in time to avert

the collision by stopping the car or checking its speed. If the headlight cast its rays upon the track and upon plaintiff's vehicle when the car was 150 feet away from the crossing, and, as appears from some of the testimony, the car could have been stopped within seventy-five or eighty feet, it would indicate a clear chance on the part of the defendants to avert the collision. The motorman himself testified that he had felt out his car and checked its speed when he noticed the automobile approaching the crossing and that he released the pressure when the automobile stopped. The jury might well have inferred from this testimony that the motorman should have seen the plaintiff's vehicle in its position of danger in time to slacken the speed or stop the car. From evidence introduced by the plaintiff it is a fair inference that the operator of the car could have slackened its speed sufficiently to have enabled the plaintiff to cross the track in safety.

Entertaining these views it follows that, in our opinion, the evidence does not establish that the plaintiff was guilty of contributory negligence as a matter of law; and the jury having resolved the question in the plaintiff's favor this court cannot interfere with its conclusion.

The judgment is affirmed.

Richards, J., and Waste, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 14, 1921, and the following opinion then rendered thereon:

THE COURT.—A majority of the Justices failing to assent to the granting of the petition for a hearing in this court, the same stands denied.

This court, however, is unanimously of the opinion that what is said in the opinion of the district court of appeal with relation to the last clear chance doctrine should not be affirmed. This was not necessary to the decision of that court. The jury were not instructed on that subject and the facts stated in the opinion and shown by the evidence were not sufficient to establish defendants' liability on that doctrine. (*Thompson* v. *Los Angeles etc. Ry. Co.*, 165 Cal.

748, 754, [134 Pac. 709]; *Arnold* v. *San Francisco-Oak-land Terminal Ry. Co.*, 175 Cal. 4, 5, [164 Pac. 798]; *Young* v. *Southern Pac. Co.*, 182 Cal. 369, [190 Pac. 36].)

Wilbur, J., Sloane, J., Shurtleff, J., Lawlor, J., and Lennon, J., concurred.