**COURTNEY v. COURTNEY.**

No. 27213.  Oct. 25, 1938.

Rehearing Denied Feb. 21, 1939.

Application for Leave to File Second Petition for Rehearing Denied March 7, 1939.

Rittenhouse, Webster & Rittenhouse, for plaintiff in error.

J A. Rinehart and W. P. Morrison, for defendant in error.

DAVISON, J. This action was brought by the defendant in error, as plaintiff, to recover damages against the plaintiff in error, or defendant, for personal injuries that she received when the defendant's automobile, in which she was riding with him, overturned on Northwest Tenth street in Oklahoma City.

The defendant was driving said auto, and the alleged cause of the accident is his negligence in the operation of same. The parties are husband and wife and were living together as such when the accident occurred and the case was tried.

At the trial, after the jury was im-

paneled, an objection was interposed on behalf of the defendant to the introduction of any evidence on the ground that the opening statement of the plaintiff's counsel revealed that she was the wife of the defendant and for that reason not entitled to maintain the action. This objection was overruled and exception taken to said ruling. Thereupon the trial proceeded and when the plaintiff was called as a witness in her own behalf, the defense counsel objected to her being allowed to testify, on the ground that, being the defendant's wife, she was not a competent witness. The trial court overruled this objection, allowed an exception to said ruling, and proceeded to hear the testimony of the plaintiff. Her testimony is the only evidence that was introduced in her behalf concerning the negligence of the defendant.

At the close of the plaintiff's evidence, the defense counsel demurred thereto, but said demurrer was overruled and exception taken to said ruling. When the evidence was all in, the defense counsel moved for a directed verdict, but this motion was also overruled and exception thereto allowed.

Upon the submission of the cause to the jury, a verdict was returned in favor of the plaintiff, and the judgment of the trial court was rendered in accordance therewith.

Thereafter, the defendant filed a motion for a new trial and after the motion was overruled perfected his appeal to this court. Many alleged errors of the trial court are contained in the petition in error, but the only questions submitted to this court for adjudication are the following: (1) Can the plaintiff, being the wife of the defendant and living with him at all times involved, maintain this action? and (2) Can the plaintiff be a competent witness in this tort action against her husband?

The plaintiff's counsel submit our decision in the case of Fiedler v Fiedler, 42 Okla. 124, 140 P. 1022, as determinative of the first question involved, and argue that there is no legal distinction between the rights of a wife to sue for a willful injury and her right to sue for a negligent injury. Defense counsel contend that the Fiedler Case is distinguishable from the present one on the ground: First, that it involved a malicious assault and battery; and for the further reason that the parties to that action had been divorced. Though the present case involves a negligent tort rather than a willful one between parties whose marital relations have not been disturbed, we find no basis imbedded in the law for applying herein legal principles different from those which controlled the Fiedler Case. Since the underlying reason advanced by the majority of the courts for holding that an action for tort cannot be maintained between spouses is the so-called substantive principle that no cause of action accrues because of the unity of their persons, and, because of the further fact that no procedural prohibition upon the maintenance of an action by one spouse without the joinder of the other exists in this state to be removed by a dissolution of the marriage, it is immaterial that the spouses are not cohabiting at the time the action is brought. See 43 Harv. L. Rev. 1032, 1042; Clark v. Clark, 11 Fed.2d 871; Main v. Main, 46 Ill. App. 106; Abbott v Abbott. 67 Me. 304; Libby v. Berry, 74 Me. 286; Bandfield v. Bandfield, 117 Mich. 80, 75 N. W. 287, 40 L. R. A. 757; Lillienkamp v. Rippetoe, 133 Tenn. 57, 179 S. W. 628, L. R. A. 1916B, 881; Schultz v. Christopher. 65 Wash. 496, 118 P. 629, 38 L. R. A (N. S.) 780; Sykes v. Speer (Tex. Civ. App.) 112 S. W. 422. This view is aptly expressed in the latter case by the following language:

"That a wife cannot sue her husband for torts committed by him against her person * * * is not an open question. * * * The reason for this holding is that there is no liability, not merely that the wife is incapable of maintaining an action against her husband: for even if she should be divorced on the next day after the injuries were inflicted, and even if the result of the injuries should be perpetuated long after the time of their infliction and after her rights as a femme sole had been fully restored, still she would not be allowed a recovery for such injuries."

Whatever cause of action the wife has accrues when the wrong is committed; and the fact of divorce subsequently granted cannot make that a cause of action which was not so at the time the legal injury occurred, and conversely such a fact will not, of course, destroy a cause of action where one arose at the time of the injury.

Nor can the difference in the nature of the torts committed be considered seriously from a legal standpoint. See Wait v. Pierce (Wis.) 209 N. W. 475, 210 N. W. 822, 48 A. L. R. 276, 286; Roberts v. Roberts, 185 N. C. 566, 118 S. E. 9, 29 A. L. R. 1479; Woltman v. Woltman, 153 Minn. 217, 189 N. W. 1022; 43 Harv. L. Rev. 1032, 1046, and authorities there cited. In the case of a negligent tort, the wife has suffered

a wrong for which the law should provide a remedy, just as in the case of willful tort. See 24 Mich L. Rev. 618; 10 Minn. L. Rev. 439; 4 Ford L. Rev. 475, 479; 11 Minn. L. Rev. 79, Bushnell v. Bushnell, 103 Conn. 583, 131 Atl. 432, 44 A. L. R. 785. There is no element to distinguish one wrong from the other in the determination of whether a remedy therefor should be allowed, and we find that the courts have made no valid distinction in such determination. See 26 Col. L. Rev. 895, 7 Tenn. L. Rev. 63, 65; Madden on Domestic Relations, 223. But see the dissenting opinion in Katzenberg v. Katzenberg, 183 Ark. 626, 627, 37 S.W.2d 696, 697, which appears never to have been followed. In Brown v. Brown, 88 Conn. 42, 89 Atl. 889, 52 L. R. A. (N. S.) 185, the following question was formulated: "[If the wife] may sue * * * for a broken promise, why may she not sue * * * for a broken arm?" We say that if the wife is to be allowed a civil action against her husband for a broken arm, how can it be defeated merely by the absence of intent or malice on the part of her wrongdoing spouse? ·

In anticipation of our perception that any distinction between the case at bar and Fiedler v Fiedler, supra, is more apparent than real, the defense counsel charge the decision in that case with being contrary to the numerical weight of authority and for that reason they say that it should be examined closely to determine whether or not it shall be continued in force. It must be conceded that this court is among the pioneering minority in allowing a tort action between husband and wife, but there are many reasons why this fact does not seem to us unfavorable. When the historical background, as well as the wording of legislative enactments on the subject of married women's rights in the states whose decisions comprise the majority of judicial opinion on the subject, is examined, together with the reasons given for refusing one spouse a tort action against the other, the weight of such authorities diminishes under the scrutiny of calculating logic and reason. The weight of authority to which we refer and to which our attention has been directed is that a married person has been refused a cause of action in damages against his or her spouse for a personal tort in the federal courts (Thompson v. Thompson, 218 U. S. 611, 31 S. Ct. 111, 54 L. Ed. 1180, 21 Ann. Cas. 921, 30 L. R. A. (N. S.) 1153; Spector v. Weisman (D. C.) 40 F.2d 792; Clark v. Clark, supra); in California (Peters v. Peters, 103 P. 219, 23 L. R. A. (N. S) 699); in Delaware (Plotkin v. Plotkin, 125 Atl. 445); in Georgia (Heyman v. Heyman, 92 S. E. 25); in Indiana (Blickenstaff v. Blickenstaff, 167 N. E. 146); in Iowa (Heacock v. Heacock, 79 N. W. 353); in Kentucky (Dishon's Adm'r v. Dishon's Adm'r, 219 S. W. 794, 13 A. L. R. 625); in Louisiana (Starns v. Starns, 146 So. 165); In Massachusetts (Frankel v. Frankel, 53 N. E. 398); in Maine (Sacknoff v Sacknoff, 161 Atl. 669); in Maryland (Furstenburg v. Furstenburg, 136 Atl. 534); in Michigan (Harvey v. Harvey, 214 N. W. 305); in Minnesota (Strom v. Strom, 107 N. W 1047, 6 L. R. A. (N. S.) 191); in Missouri (Rogers v. Rogers, 177 S. W. 382); in Mississippi (Austin v. Austin, 100 So. 591); in Montana (Conley v. Conley, 15 P.2d 922); in Nebraska (Emerson v. Western Seed & Irrigation Co., 216 N. W 297, 56 A. L. R. 327); in New Jersey (Smith v. Smith, 133 Atl. 860); in New York (Schubert v. August Schubert Wagon Co., 164 N. E. 42, 64 A. L. R. 293); in Ohio (Leonardi v. Leonardi, 153 N. E. 93); in Rhode Island (Oken v. Oken, 117 Atl. 357); in Tennessee (Lillienkamp v. Rippetoe, supra); in Texas (Gowen v. Gowen, 264 S. W. 529); in Vermont (Comstock v. Comstock, 169 Atl. 903); in Virginia (Keister's Adm'r v. Keister's Ex'rs, 96 S. E. 315, 1 A. L. R. 439); in West Virginia (Poling v. Poling, 179 S. E. 604); and in Washington (Schultz v. Christopher, supra)

The courts of nine states besides our own have sustained liability in such actions. See Bennett v. Bennett, 224 Ala. 335. 140 So. 378; Katzenberg v. Katzenberg, supra; Kalamian v. Kalamian. 107 Conn. 86, 139 Atl. 635; Rains v. Rains, 97 Colo. 19, 46 P.2d 740; Gilman v. Gilman, 78 N. H. 4, 95 A. 657, L R. A 1916B, 907; Roberts v. Roberts. supra; Prosser v. Prosser. 114 S. C. 45, 102 S. E. 787; Fitzmaurice v. Fitzmaurice, 62 N. D. 191, 242 N. W. 526; and Fontaine v. Fontaine, 205 Wis. 570, 238 N W. 410.

Of the decisions comprising the majority of opinion, the ones rendered by the courts of Louisiana, New Jersey, Tennessee, Texas, and Vermont can be given little weight by this court for the reason that the statutes dealing with the rights of married women in these states either expressly forbid such actions or expressly allow only actions between spouses concerning property and contract rights. See 4 Ford L. Rev. 475, 476; Smith v. Smith, supra; articles 4613-4618, 4621, Tex. Ann. Civ. Statutes (Vernon

1925) ; Lillienkamp v. Rippetoe, supra ; sections 3074, 3077, Vt. Pub Laws (1934) ; Comstock v. Comstock, supra ; and article 105, La. Code Prac. (Dart 1932). The Legislature of Iowa has made it clear that the common-law inability of a wife to acquire a cause of action against her husband carried over into the Civil Code of that state by enacting, in addition to the statute removing the procedural obstacle (section 10992, Iowa Code, 1931), a statute creating the substantive right to maintain actions only as to her separate property (section 10448, Iowa Code, 1931). See In re Dolmage's Estate (Iowa) 212 N. W. 553. In Delaware, Kentucky, Maine, Massachusetts, and West Virginia, the legal status of married persons still retains many of its common-law vestiges, among which is the disability to contract with each other and to enforce the same by litigation. See 43 Harv. L. Rev 1032, 1042; Spruance v. Equitable Trust Co. (Dela.) 103 Atl. 577; Kalfus v. Kalfus, 12 Ky. Law Rep. 839; Crowther v. Crowther, 55 Me. 358; Perkins v. Blethen, 107 Me. 443, 78 A. 574, 31 L R. A. (N. S.) 1148; Edwards v. Stevens, 3 Allen, 315 (Mass. 1862) ; Roseberry v Roseberry (1886) 27 W. Va. 759. This, of course, is not true of most states, including our own. See 4 Wis. L. Rev. 37 ; 4 Ford. L. Rev. 475; 43 Harv L. Rev. 1032; 9 N. C. L. Rev. 89 ; 26 Col. L. Rev. 895; chapter 12, O. S. 1931; Brusha v. Bd of Education of Oklahoma City, 41 Okla. 595, 139 P. 298, L. R. A. 1916C, 233 (rehearing, 44 Okla. 285, 144 P. 177) ; Temple v. State, 74 Okla. 215, 178 P. 113; Cooper v. Bank of Indian Territory, 4 Okla. 632, 46 P. 475; Farmers St. Bank of Ada v. Keen, 66 Okla. 62, 167 P. 207 ; Caylor Lmbr. Co. v. Mays, 73 Okla. 30, 174 P 521; Milsop v. Kahn, 174 Okla. 158, 49 P.2d 729. The statute of Georgia (section 2994, Civ. Code, 1910) conditions the right of the wife to sue her husband for tort upon her habitation separate and apart from him. See Heyman v. Heyman, supra. In Maine, the Married Women's Act is recognized as expressly obviating only the procedural necessity of the joinder of the husband in suits by the wife; in short, "it only authorizes her to maintain alone such actions as previously could be sustained when brought by the husband alone or by the husband and wife jointly. It enlarges not her right of action, but her sole right of action." 161 A. 670. And the Maine Legislature has affirmed such judicial construction. See Sacknoff v. Sacknoff, supra. In Maryland, also, the purpose of the Legislature by its enactments to permit actions by the wife in her own name for only such wrongs as "could not theretofore be thus independently redressed," 136 A. 536, has been made reasonably clear by the wording of said statutes. See Furstenberg v. Furstenberg, supra. In Missouri, the purposes for which a married woman is considered a femme sole are expressly limited by statute. See Rogers v. Rogers, supra ; and section 8304, Mo. R. S. 1909. It is reasonably certain from a consideration of the wording of the Ohio Statute (section 11245), together with the legislative history of the question in that state, that it was not intended by said statute to create any new cause of action in the wife which did not exist at common law. See Leonardi v. Leonardi, supra. In Rhode Island, the common-law disabilities of the wife have been expressly recognized by statute. See Oken v. Oken, supra, and Gorman v. McHale, 24 R. I. 257. The California Code also recognizes the common-law disability of the wife in the matter of litigation against her husband, and removes it only as to property and when she is living separate and apart from him. See Peters v Peters, supra Laws relative to community property rights in both California and Texas add an extra complication to such suits in those states See 65 U. S. Law Rev 187; Dunbar v. San Francisco-Oakland Terminal Rys., 54 Cal. App. 15, 201 P. 330; Northern Texas Tr. Co. v. Hill (Tex. Civ. App.) 297 S. W. 778. The weakness and obvious conflict of the New York decisions detract from their weight to such an extent that they are worthy of little consideration, and furthermore they add nothing to other decisions herein considered as far as the fundamental principles involved in the present case are concerned. See 43 Harv. L. Rev. 1032, 1047, 1048; Schultz v. Schultz, 27 Hun. 26 (N. Y. 1882). Compare Longendyke v. Longendyke, 44 Barb. 366 (N. Y. 1863) ; Freethy v. Freethy, 42 Barb. 641 (N. Y. 1865). See, also, 36 Harv. L Rev. 346; Newton v. Weber. 119 Misc. 240, 196 N. Y. Supp. 113; Power v. Lester, 23 N. Y. 527; Allen v. Allen, 246 N. Y. 571, 159 N. E. 656; 37 Yale L. Rev. 834; Schubert v. Schubert Wagon Co., supra.

The weight to be given the decisions adhering to the majority view is further lessened by strong dissenting opinions filed in some of them and the doubts which others openly express as to the soundness of their holding. See, for example, the dissenting opinions in Allen v. Allen; Gowen v. Gowen; Austin v. Austin, and Thompson v. Thompson, supra; and the views expressed in Sykes

v. Speer, supra, and Wilson v. Brown (Tex. Civ. App.) 154 S. W. 322, at page 324.

Spouses could not sue each other at common law not only because of their inability to bring such actions without joining the other as a coparty, but for the fundamental reason that because of the common-law conception of marriage and the unity of their persons brought about by the marriage, neither could have a cause of action against the other. Upon marriage, the husband was vested with title in all of his wife's property, including her choses in action, and after marriage her services and earnings became his and all private causes of action against either then became choses against both. See 43 Harv. L. Rev. 1032; 5 Ind. L. Jr. 218; 4 Wis. L. Rev. 37; 30 Law Notes, 165.

Prior to 1910 the courts of this country had generally sustained the right of a wife to sue her husband for torts against her separate property (4 Ford L. Rev. 475, 26 Col. L. Rev. 895), but the courts that had passed upon her right to sue him for a personal tort had denied the existence of such a right. See Bandfield v. Bandfield (1899) supra; Strom v. Strom, supra, and note, 116 Am. St. Rep. 387. These decisions, however, merely followed the general rule that in the absence of an express statute there is no right to maintain an action at law for such a wrong. On this proposition, the cases of Phillips v. Barnett, 1 Q. B. D. 436 (1876), and Abbott v. Abbott, 67 Me. 304 (1877), had been cited as leading authorities. As these cases, however, dealt only with the effect of divorce in the absence of a married woman's act, it can be readily seen that little reliance should have been placed upon them in cases wherein such an act was involved. 43 Harv. L. Rev. 1032, 1040

In the year 1910 the majority of the United States Supreme Court construed the Married Woman's Act of the District of Columbia, D. C. Code 1929, c. 14, sec. 43, in accord with the existing authority against the right in the case of Thompson v. Thompson, supra, but Mr. Justice Harland, joined by Justices Holmes and Hughes, dissented. See Fiedler v. Fiedler, supra. Four years later the doctrine of the dissenting justices was made the basis of a direct holding in the case of Brown v. Brown (1914) 88 Conn. 42, 89 Atl. 889, 52 L. R. A. (N. S.) 185; 11 Minn. L. Rev. 79; 24 Mich. L. Rev. 618; 12 Iowa L. Rev. 93.

The only decisions reaching a result different from our holding in Fiedler v. Fiedler, supra, that we consider at all relevant to the question in this state were rendered in states whose statutes provide substantially that women shall retain the same legal individuality after marriage as before, or that the wife shall have the same rights her husband possesses, or those which simply confer upon a married woman the right to sue and be sued as a femme sole. See 4 Ford. L. Rev. 475, 479. Thus the weight of relevant authority, instead of being comprised of decisions rendered in 27 jurisdictions, dwindles to those of only 13 jurisdictions, namely: Minnesota (sec. 8616, Mason's Stat. 1927); Mississippi (sec. 1940, Miss. Code Ann. 1930); Washington (sec. 6901, R. R. S. Ann. 1932; Delaware (chap. 197, sec. 16, Dela. Laws, 1919; District of Columbia (sec. 43, Title 14, D. C. Code, 1929); Indiana (sec. 38-115, Burns' Stat. Ann., 1933); Iowa (sec. 10922, Iowa Code, 1931); Maryland (sec. 5, art. 45, Bagby's Ann. Code, 1924); Michigan (sec. 14014, Comp. Laws, 1929); Montana (secs. 5791, 5809, Choate Rev. Code Ann.); Nebraska (sec. 20-305, Neb. Comp. Stat. 1929); New York (sec. 57, c. 14, Dom. Rel. Laws, 1909); Virginia (sec. 5134, Michie Code, 1930); West Virginia Code 1931, 48-3-19.

Without quoting the opinions rendered in these states, we will consider the reasons promulgated therein for refusing a wife recovery against her husband in a tort action and presented by counsel for denying the plaintiff the right to maintain the present action. It is asserted that statutes similar to sections 145 and 1665, O. S. 1931, are in derogation of the common law as to a married woman's legal status and for that reason they should be strictly construed; that actions between husband and wife are against public policy because they tend to bring about the dissolution of the marriage; that for injuries inflicted by her husband the wife has an adequate remedy in divorce and criminal proceedings, and that the allowance of such suits would open new avenues for fraud and collusion. In Emerson v. Western Seed & Irrigation Co., supra, it was said:

"The procedural difficulties, the danger of disrupting the secrecy and serenity of marital relations, the avenue for fraud, the startling innovation in permitting such controversies, and the lack of clear legislative indorsement have all been assigned as ample reasons for the refusal of the courts to sanction, by supplying statutory interpretation, a new form of litigation manifestly requiring unequivocal legislation for its existence."

As to the judicial interpretation of the Married Women's Acts, we find little consistency and much conflict in the opinions of the various courts. See 9 N. C. L. Rev. 89; 4 Wis. L. Rev. 37; 4 Ford. L. Rev. 475; 12 Boston L. Rev. 134; 43 Harv L. Rev. 1032, 1081. Some of them have denied a married woman the right to maintain a tort action against her husband under statutes which expressly allow her an action only when her property and contract rights are involved (Compare sections 5169, 5170, 5172, Conn. Gen. Stat. 1930, and Kalamian v. Kalamian; Bushnell v. Bushnell, and Brown v. Brown, all supra, with sections 5791, 5809, Mont. Rev. Code Ann., Choate. 1921, and Conley v Conley, supra.) Nevertheless, this type of statute has been construed to authorize tort actions between husband and wife in South Carolina (Prosser v. Prosser, supra), but not in California (Peters v. Peters, supra).

Of the states that have statutes granting married women the right to sue and be sued as a femme sole, five jurisdictions have allowed tort actions between husband and wife on the ground that the common-law status was totally abrogated thereby (Fitzpatrick v. Owens, 124 Ark. 167, 186 S. W 832; dissenting opinion, 187 S. W. 460; Rains v. Rains, supra; Gilman v. Gilman, supra; Roberts v Roberts, supra, and Wait v. Pierce, supra), while twelve have not permitted such actions, maintaining that these statutes give the wife the right to sue alone only where formerly she had the right to sue by joining with her husband or next friend (Henneger v. Lomas, 145 Ind. 287, 44 N. E. 462; Hobbs v. Hobbs, 70 Me. 381; Kelly v Williams, 94 Mont. 19, 21 P.2d 58; Perlman v. Brooklyn City Ry. Co., 117 Misc. 353, 119 N. Y. Supp. 891, affirmed, 202 App. Div. 822, 194 N Y. Supp. 971; and Thompson v. Thompson; Plotkin v. Plotkin; Furstenburg v Furstenberg; Harvey v. Harvey; Rogers v Rogers; Emerson v. Western Seed & Irr. Co.; Keister's Adm'r v. Keister's Exec'rs; and Poling v. Poling, all supra). See, also, Schultz v. Christopher, supra, wherein a statute unqualifiedly giving the wife the same right as her husband was held to confer upon neither spouse the right to sue the other in tort, and compare with Wait v Pierce, supra, where a similar provision combined with another which permitted the wife to sue as a femme sole was construed as enabling her to sue her husband. Also, compare the opinion in Kelly v. Williams, supra, where the intent of the Legislature governs, with that in Rogers v. Rogers, supra, which follows the rule that

statutes in derogation of the common law must be strictly construed.

This court has adopted the view that, since our Code and Constitution provide for redress of wrongs against all persons without discrimination, all persons, whether male or female, married or unmarried, are allowed a civil remedy therefor. See section 6, art. 2, Okla. Const.; sec. 9956, O. S. 1931 (sec. 2845, R. L 1910); Fiedler v. Fiedler, supra. It is pointed out in the Fiedler Case that this court, by reason of section 2948, R. L. 1910 (sec 3, O. S. 1931), is not bound by the rule of strict construction with reference to statutes in derogation of the common law that has been so prominently advanced for preserving the married woman's common-law disability in other states. As it is unquestioned and we must recognize, as most courts do, that a wife has no substantive right to sue her husband at common law, it must be admitted, as said in Wait v. Pierce, supra, that if any such right exists today, it is the result of legislative enactment. But it is our view that, by reason of the statutes just mentioned, it was unnecessary for the Legislature, by section 1665, O. S. 1931, to allow the wife a cause of action in express terms —she, like all ordinary persons, had already been granted that by our Constitution and previous statutes. (See 43 Harv. L. Rev. 1032, 1049; 24 Mich. L. Rev. 618; 4 Ford, L. Rev. 475.) It was necessary by section 1665 only to free the married woman of her procedural disability in order that she might exercise the natural rights of an ordinary person which she had gradually gained through a change in the conception of marriage that existed in the so-called "dark ages"— a change that had been brought about step by step in conformity with the contemporary trend of thought, beginning with legislative enactments and judicial interpretation regarding her property rights. Thus, the decisions decreeing that statutes similar to section 1665, instead of creating a cause of action, merely remove the procedural disability of the wife to sue alone, and therefore leave the foundation of the common-law marriage status unchanged, do not weaken the position taken in Fiedler v. Fiedler, supra, but concur with the views therein expressed upon matters of interpretation. See 12 Iowa, L. Rev. 93. The only difference is in the result remaining, and the reason for this difference in result is virtually a matter of policy See 9 N. C. L. Rev. 89. In the jurisdictions in which courts hold contrary to Fiedler v. Fiedler, the common-law conception of

marriage is not necessarily contrary to the substance and spirit of their Codes as a whole, whereas in this state it is, because here the rule of strict construction has been specifically abolished and a pronounced tendency of liberal construction shown in our laws and Constitution to the end of attaining an "open door" policy in our courts and a legal redress for every wrong. A further reason for the liberal construction of such statutes is that they are remedial in character. See 9 N. C. L. Rev. 89; Black, Interpretation of Laws (2d Ed.) 1911, 375-378. Other evidence of the aim to free married women from their common-law disabilities and to give effect to the modern and more enlightened conception of the marriage status is found in the fact that in this state, as in North Dakota from whence came our married women's statutes, a wife is not under the legal disabilities still obtaining in many of the states whose courts adhere to the majority view. See Fitzmaurice v. Fitzmaurice, supra; Brusha v. Board of Educ. of Oklahoma City; Farmers' State Bank of Ada v. Keen; Cooper v. Bank of Indian Territory; Milsap v. Kahn; Caylor Lmbr. Co. v Mays, heretofore cited.

In the early case of Helvie et al. v. Hoover, 11 Okla. 687, 69 P. 958, we find the following language:

"Thus it will be seen that while the old rule of the common law was that a married woman had no legal entity, and while the courts, as a rule, have been slow in conceding the wife's equality with her husband, and the right to enjoy equally with him the right of property, today, under our statutes, as they now exist, there is no distinction whatever. There is no right whatever that is suspended during the marriage relation. They are not in any sense, as at common law, only one person."

Defense counsel further argue that no disability of the wife in a suit against her husband is removed by section 1665, supra, for the reason that it expressly provides that "women * * * shall receive the same protection of all her rights as a woman, which her husband does as a man." The hypothesis of their argument is that this language gives her only such rights against her husband as he possesses against her, and from this they deduce that, since at common law her husband could not sue her, the statute continues the same prohibition against her. This argument is not entirely new and has been termed the argument of "reciprocity" or "lack of mutuality." See 13 R. C. L. 1395; 43 Harv. L. Rev. 1032, 1049. It finds support in the decisions of

the following cases: Libby v Berry; Austin v. Austin; Conley v. Conley; Schultz v. Christopher; Strom v. Strom; Heyman v. Heyman; Harvey v. Harvey, and Rogers v. Rogers, all supra. Of course, in view of what we have already indicated concerning the abolition of the common-law status of married women in Oklahoma, any argument based upon that foundation must be ineffective, but this court has gone further and expressed itself in terms that would seem to disperse all doubt as to the recognized interpretation of the wording in question. By the interpretation given section 1665 in the case of Moore et al. v. Moore, 59 Okla. 83, 158 P. 578, we said, in effect, that it means exactly what it says: that it provides that married women shall have the same rights that their husbands have as "men"—not as "husbands." There we held:

"Under the laws of Oklahoma, a woman, though married, retains her legal existence and personality, and may sue in the courts in her own name for the protection or redress of injuries sustained to her reputation, person, property or natural rights, the same as a man can do." (Emphasis ours.)

The argument that the wife has sufficient remedy in criminal proceedings and separate maintenance and divorce actions for the wrongs committed by her husband is barely worthy of consideration in any case (see Fiedler v. Fiedler), and especially in a negligence case. See 10 Minn. L. Rev. 439. Such actions may be adequate to prevent future wrongs, but they certainly do not compensate for past injuries. See 7 Tenn. L. Rev. 63, 65; 43 Harv. L. Rev. 1032, 1049; Crowell v. Crowell (N. C.) 105 S. E. 206, 209.

As to the argument that tort actions between husband and wife are against the public policy of protecting and preserving the institution of marriage, this court has already expressed its views on this point with reference to willful and malicious torts. See Fiedler v. Fiedler, supra. See, also, 30 Law Notes, 165; Brown v Brown, supra. Even some of the courts which hold contrary to our decision in the Fiedler Case agree with it in their views on this argument. For instance, in Schultz v. Schultz, 27 Hun, 26, the New York court said:

"It is not regarded as discourteous to say that the ill treatment of the wife by the husband, which consists in the violence of an assault and battery, is more destructive to conjugal union and tranquility than the declaration of a right in the wife to maintain an action against her husband for an as-

sault and battery upon her would be. It is not at all unlikely that it would operate as a restraint upon militant husbands disposed to indulge in such evidence of conjugal union and tranquillity. * * *

"* * * The language of the statute is * * * quite comprehensive enough to include the husband as one of the persons against whom the wife may bring an action for assault and battery, and who has been relieved from liability under the language of the statute only by judicial resort to what is declared to have been the intention of the Legislature on the subject. To allow the right in an action of this character, in accordance with the language of the statute, would be to promote greater harmony. * * *"

The contention that such actions should not be allowed for the reason that they tend to disturb domestic tranquility is particularly weak We can perceive of nothing in the nature of tort actions which would make them more acrimonious and disturbing to domestic tranquility than property actions, criminal proceedings, and divorce suits. See 43 Harv. L. Rev. 1032, 1053; 26 Ill. L. Rev. 89; 26 Col. L. Rev. 895; 4 Ford. L. Rev. 475 479.

The courts holding that the wife cannot sue her husband for personal injuries do not deny that their statutes allow the wife to sue the husband for a tort against her property. The result of the majority view, therefore, is that the wife may sue her husband for the conversion of her chattel but cannot sue him to recover damages for the loss of an arm

When analyzed it can readily be discerned that the source of whatever marital discord arises between the spouses in such matters usually lies not in the court proceedings but in the wrong which occasions them. See 4 Ford. L. Rev. 475, 479; Brown v. Brown, supra, and Wait v. Pierce, supra.

Many dire predictions have been made concerning the effect of allowing such actions. In this matter the courts have exercised great license with language, and the desire to safeguard society's most vital institution has given rise to some rather strong statements in judicial opinions. 4 Ford. L. Rev. supra. In Ritter v Ritter, 31 Pa. 396, at page 398, it was said:

"The flames which litigation would kindle on the domestic hearth would consume in an instant the conjugal bond, and bring on a new era indeed—an era of universal discord, of unchastity, of bastardy, or dissoluteness, of violence, cruelty and murders."

Probably a more sound basis for the pub-

lic policy argument lies in the feeling that it would be highly undesirable to make possible liability every time that one spouse touches the other, or liability for negligence every time the household is improperly managed. 43 Harv. L. Rev. 1032, 1053. This thought was voiced in the now famous and often-quoted dissenting opinion by Mr. Justice Eschweiler in the case of Wait v. Pierce, supra, wherein the following appears:

"If, as now held by the majority opinion, the common law doctrine of refusing judicial remedy by actions of tort for injuries to the person of one spouse is abrogated in the particular instance presented here, it must necessarily be abrogated entirely It cannot afterwards be left to the courts to so slice it up as to recognize it as still alive for certain classes of injuries to the person of the spouse and as no longer alive for other classes of such injuries. The standard having been now fixed as of legislative creation and determination, no method is or probably well can be pointed out for judicial limitation or discrimination The common law on this subject must be considered as all swept away or not at all; no half way stopping place is indicated.

"The uninvited kiss, no matter how cold and chaste, upon the nonconsenting alabaster femme sole brow is an assault and battery, and substantial damages may be awarded for such. Craker v. Chi. & N. W. R. Co., 36 Wis. 657, 17 Am. Rep. 504, 8 Am. Neg. Cas. 665, where a verdict of $1,000 (p. 661) was upheld. Under the present construction by the majority of the rights of the married woman such form of assault and battery by a present day husband must necessarily result in giving a right of action in the present day wife. The surrender of his former immunity is hardly compensated by the possibility of recovering, under the new dispensation, monetary damages by an overkissed husband."

In the case of Duffies v. Duffies, 76 Wis. 374, 45 N. W. 522, 20 Am. St. Rep. 79, 8 L. R. A. 420, holding that a wife cannot sue for alienation of her husband's affections, it was said:

"This right of action in the wife would be the most fruitful source of litigation of any that can be thought of."

Years later, however, the Wisconsin Supreme Court had the following to say in its decision of Wait v. Pierce, supra, concerning the above statement:

"The undesirable consequences of permitting the wife to sue for alienation of affections and loss of the society of her husband, pointed out by the court in Duffies v Duffies * * * did not follow the conferring of that right upon the wife, and it is

quite as probable that those considerations which are urged in support of a narrower construction of this statute than that which we have given it are likewise not well founded."

There is nothing to show that in the states which permit tort actions between husband and wife the peace and harmony of the home is disrupted to any greater extent, or that the courts are deluged with a greater flood of such litigation, than in the states which deny such actions, notwithstanding the predictions cited. See 30 Law Notes, 165; 9 N. C. Law Rev. 89; 26 Ill. L. Rev. 89; 24 Mich. L. Rev. 618; Bushnell v. Bushnell, supra. In his dissenting opinion in Wick v. Wick, 192 Wis. 260, 264-265, 212 N. W. 787, 789, Mr. Justice Crownhart said:

"Every step taken to emancipate women from the rigorous restrictions of the common law has been met with dark forebodings on the part of the judiciary. But now that women have been put on a parity with men as to their personal and property rights, society survives, with none of the dark portents of the judicial prophets realized."

In practice, the fear that such litigation will destroy marital peace has become more groundless since the purchase of liability insurance has become so common. 26 Ill. L. Rev. 89. When the real defendant is an insurance company, as is frequently the case in negligence actions, there is little danger of such suit disrupting pleasant family relations. See 4 Ford. L. Rev. 475, 479; Harvey v. Harvey, 239 Mich. 142, 214 N. W. 305, 306; Perlman v. Brooklyn City R. Co., 117 Misc. 353, 191 N. Y. Supp. 891.

This brings us to another objection frequently voiced against allowing such actions. It is asserted that such a policy would open a fertile field for the perpetration of fraud upon insurance companies by collusion between the spouses. Harvey v. Harvey; Perlman v. Brooklyn City R Co., both supra. Newton v. Weber, 119 Misc. 240, 196 N. Y. Supp. 113. The danger of fraud upon the insurer, however, seems no more insurmountable than in actions between parties other than husband and wife, as, for example, where a guest passenger sues his insured host to recover for injuries due to the host's negligence. The defendant's counsel call our attention to cases wherein it is either said or intimated that the purpose of a damage suit between spouses in many instances is only to "raid" an insurance company, but we fail to see the justification for the use of the word "raid." A man pays for insurance to indemnify any person whom he injures by his careless driving, and if it is intended to except his wife from such indemnification, such intent can very easily be expressed in the contract See 4 Wis. L. Rev. 37; 30 Law Notes, 165; 4 Ford L. Rev. 475, 479. And as to the question of fraud, it has been very logically submitted that no such case should be saddled with a presumption of fraud ab initio. See 43 Harv. L. Rev. 1032, 1049; Kalamian v. Kalamian, supra; Bushnell v. Bushnell, supra.

The meaning of such statutes as our Married Women's Act and the judicial interpretations thereof have sometimes been misconstrued as allowing a wife the same rights against her husband that a stranger would have, but statements to that effect are erroneous. See 26 Ill. L. Rev. 89. There is little basis in the decisions for such a broad import. To carry such a premise to its logical conclusion would mean that the wife could sue the husband for such conduct as the "unwanted kiss" that Mr. Justice Eschweiler referred to in Wait v. Pierce, supra. We believe that all courts would shrink from opening their doors to the absurdities accompanying such a doctrine, but it would be equally absurd to refuse a remedy to a wife who has been shot by her husband merely because of the difficulty in drawing the exact line of demarcation between assault with a gun and assault by a kiss. In Fiedler v. Fiedler, supra, we recognized that the rights of married persons are necessarily affected by the reciprocal rights and obligations inherent in marriage relation. This was indicated in the following words of the opinion in that case:

"By this we do not mean to be understood as holding that a married woman in such cases is entitled to exemplary damages for mental anguish, humiliation, etc. We doubt whether such doctrine would be sound. These are matters which, in the very nature of things, she takes chances on, assumes the risk of, when she enters into the marriage contract and upon marriage relations."

Undoubtedly there is conduct tortious when engaged in by a third person which would not be tortious between husband and wife because of the mutual concessions attending their relationship and implied in the marriage contract. Upon marriage it is necessary that both parties forswear certain rights previously theirs. See 9 N. C. L. Rev. 89; 11 Marq. L. Rev. 55; 4 Wis. L. Rev. 37; 43 Harv. L. Rev. 1032, 1055; Mathewson v. Mathewson, 79 Conn. 23, 63 Atl. 285, 5 L. R. A. (N. S.) 611; Brown v.

Brown, supra. For this reason, when personal tort actions are allowed between husband and wife, the marriage status should create a presumption of consent to many acts which would be torts if committed against a third party. See 4 Ford. L. Rev. 475, 483. Some writers submit that in the case of negligence, since husband and wife are engaged in a common enterprise, for common benefit, often with common control, each should bear the risk which the other takes in the ordinary conduct of the domestic establishment. It has been perceived that to this extent there is no great hardship, in view of the fact that the relation is entered into consensually. Under this view, only those acts which are outside the scope of marital intercourse could constitute a cause of action. See 43 Harv. L. Rev. 1032, 1055. In Bushnell v. Bushnell, supra, some of these considerations were dealt with, but no such questions are raised herein, and we decline to consider them at this time. For the purposes of the present case we go no further than to quote with approval the following words of the Wisconsin Supreme Court in Wait v Pierce, supra:

"If the forebodings of those who see in the modification of the marital status consequences destructive of our social institutions are realized in experience, the matter is within the control of the Legislature, and we may well assume that succeeding generations will be as wise as we of this or preceding generations. It is not necessary for us to determine what remains of the marital status as it existed at common law. It must be true that when a man and woman marry, their reciprocal rights and duties are different toward each other than toward third persons. The extent of the difference under the existing law must be developed by time and experience."

One thing of which we are certain is that the old idea of family unity being obtainable only by the reasoned device of the common law in vesting the husband with all the rights and powers and reducing the wife to a nullity before the law is absolutely outmoded and obsolete. There can be no strict, unvarying unity between persons possessing mutual rights as against each other; there can be no automatic stability between equals. There, of course, must be a certain unity of purpose in the undertakings of matrimonial union, but this by no means implies that husband and wife must be considered as one for all purposes. The whole trend of civilization has been away from the artificially solidified groups and toward the free individual. Little by little government has progressed from absolutism to democracy, industry has progressed from slavery to the point where the employer and the representatives of his employees contract as equals, and, similarly, the family has progressed from the day when the patriarch had the power of life and death over the members of his family to the day when sons choose their own vocations and daughters their own husbands; and the authority and power of the husband and father depends to a great degree upon such affection, respect, and esteem as he may have actually won on his own merits. See 30 Law Notes, 165. As the Supreme Court of North Carolina said in Crowell v. Crowell, 180 N. C. 516, 105 S. E. 206 (131 N. C. 66, 106 S. E. 149):

"Whether a man has laid open his wife's head with a bludgeon, put out her eye, broken her arm, or poisoned her body, he is no longer exempt from liability to her on the ground that he vowed at the altar to 'love, cherish and protect' her. We have progressed that far in civilization and justice."

In view of the foregoing considerations, we must hold that one spouse may sue the other for the recovery of damages for personal injuries resulting from the negligence of the latter. Upon this hypothesis the trial court committed no error in overruling the defense counsel's objection to the introduction of any evidence and their demurrer to the plaintiff's evidence.

The remaining question raised by said counsel concerns the competency of the plaintiff as a witness in this cause. Since she is the wife of the defendant, counsel cite the following words of the third subdivision of section 272, O. S. 1931, as an unequivocal ban upon such evidence:

"The following persons shall be incompetent to testify: * * *

"Third. Husband and wife, for or against each other, except concerning transactions in which one acted as the agent of the other, or when they are joint parties and have a joint interest in the action; but in no case shall either be permitted to testify concerning any communication made by one to the other during the marriage, whether called while that relation subsisted, or afterwards."

It is our opinion that any prohibition contained in the above words applies only to "witnesses" in the narrower meaning of the word. i.e., when testifying for another, and does not prevent a party to an action from testifying in his own behalf. In Turner v. Nicholson, 143 Okla. 45, 287 P.

396, the same statute (section 589, C. O. S. 1921) was under consideration, and there we said:

"The exception provided for in section 589, supra, that the husband or wife may testify for or against each other when they are joint parties, should be understood as also contemplating the spouse testifying under these circumstances for or against himself. In fact, this would seem to be one of the objects of the exception, for a spouse standing alone as a party to a case can testify then for himself, or be called by his adversary. * * * It surely must follow that there exists no law of this state which would preclude him from testifying when his liability was being determined."

Any other construction of the quoted words of the statute would amount to an absurdity. It would be highly incongruous and practically a vain thing, by constitutional or statutory provision, to confer upon married women the power to control and to possess their separate property and personal rights and to litigate concerning same, and yet deny them the right to testify in the interest of protecting such rights. See Jones on Evidence, Civ. Cas. (3rd Ed.) sec. 747. Such a denial would limit and in many cases completely rob them of the full enjoyment of the rights already granted them, for in some instances their own testimony (as in this case) would be the only material evidence offered in their behalf, and in other cases it would be the only direct and material evidence obtainable. It is beyond our comprehension to understand why the Legislature would grant married women such personal property rights as they now enjoy under the provisions of certain statutes and then virtually withdraw their power to protect such rights by other statutes. It is a cardinal principle in the construction and interpretation of statutes that the purpose of other statutes related to and concerning their subject matter may be considered, and when the adoption of one interpretation thereof would lead to consequences which are absurd and which the Legislature cannot be held to have contemplated, the courts are bound to presume that such consequences were not intended, and to adopt a construction which will promote the ends of justice and avoid such absurdities. Protest of Chicago, R. I. & P. Ry. Co., 137 Okla. 186, 279 P. 319; Blevins v. W. A. Graham Co., 72 Okla. 308, 182 P. 247; Town of Grove v Haskell, 31 Okla. 77, 116 P. 805; Walton v. Donnelly, 83 Okla. 233, 201 P. 367; Ledegar v. Bockoven, 77 Okla. 58, 185 P. 1097; Beaty v. State, 35 Okla. 677,

130 P. 956; In re Benson, 178 Okla. 299, 62 P.2d 962. In Spitz's Appeal, 56 Conn. 184, 7 Am. St Rep. 303, it was said:

"A claim that, while the wife may sue her husband and obtain judgment and execution against him, she could not testify in support of the allegations of her complaint, because the peace of the family might thereby be disturbed, would border upon absurdity."

In Hunter v. State, 10 Okla. Cr. 119, 134 P. 1134, Ann. Cas. 1916A, 612, the court made the following observations:

"Suppose a husband should publish a libel or slander upon his wife, would it not be a prostitution of reason, and a mockery upon justice to exclude her evidence upon the ground that it would impair the sanctity of the home and destroy the confidence, peace, and harmony of the marital relations to permit her to testify? Many other illustrations could be offered. What we are after is the principle involved, the ground upon which the testimony of the wife is excluded. Considering the substance rather than the form of things, we are of the opinion that the idea that the wife can only testify against her husband for an assault committed upon her person is a relic of barbarism. We decline to perpetuate any such idea in Oklahoma."

To interpret the statute in question as forbidding a married woman to testify in her own action would not only have the effect of emasculating our married women's statutes, but it would create a repugnancy to or conflict with section 268, O. S. 1931, which provides that no person shall be disqualified in any civil action or proceeding by reason of his interest in the result thereof, and section 270, O S. 1931, which provides that any party to a civil action or proceeding may compel an adverse witness or an adverse party, for whose benefit the action is brought, to testify as a witness therein.

It has been held that the common-law rule that a wife cannot testify against her husband does not apply to actions in which the two have conflicting interests, and said rule has been expressly repudiated in this state See Spitz's Appeal, supra; Hunter v. State, supra; and the dictum in Jin Fuey Moy v. United States, 254 U. S. 189, 65 L. Ed. 214, 41 S. Ct. 98, and Funk v. United States, 290 U. S. 371, 78 L. Ed. 369. In some states that have adopted common-law rules to a great extent, resort has been had to the doctrine termed "ex necessitate rei," or the "necessity of the thing," to escape the absurd and unjust consequences of the common-law rule on this subject See Jones

on Evidence, Civ. Cas. (3d Ed.) sec. 743; Henry v. Sneed, 99 Mo. 407, 17 Am. St. Rep. 580; Ill. Cent. Ry. Co. v. Taylor, 24 Ill. 323; Ill Cent. R. R. Co. v. Copeland, 24 Ill. 332, 76 Am. Dec. 749; McGill v. Rowand, 3 Pa. 451, 45 Am. Dec. 654. And there is a general tendency among the courts to hold that cases of corporeal injury come within an exception to the rule. See note, U. P. L. R. 164; 20 Minn. L. Rev. 693, 695; 4 Wigmore, Evidence (2d Ed.) sec. 2239; Jones on Evidence, Civ. Cases (3d Ed.) sec 734; Bouvier's Law Dictionary (3d Ed.) p. 3478; Words and Phrases, "Competent Witness"; Hanon v. State, 63 Md. 123; 76. A. L. R. 1088 (annotation).

In view of the principles approved herein, we hold that the plaintiff in the within cause was a competent witness and the trial court committed no error in allowing her to testify on her own behalf.

As it is our opinion that the trial court committed no error in its rulings as alleged, its judgment is hereby affirmed.

O'SBORN, C. J, BAYLESS, V. C. J., and PHELPS and HURST, JJ., concur. RILEY, WELCH, CORN, and GIBSON, JJ., dissent.